# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO: WESTERN DIVISION

BRYAN KANU
    2663 WENDEE DR.
    APT. 1919
    CINCINNATI, OHIO, 45238

        PLAINTIFF

    -vs-

CITY OF CINCINNATI
    OFFICE OF CITY SOLICITOR
    ROOM 214 CITY HALL
    801 PLUM STREET
    CINCINNATI, OH 45202

CINCINNATI POLICE DEPARTMENT, DISTRICT 4
    DISTRICT 4
    4150 READING RD.
    CINCINNATI, OHIO, 42229

OFFICE OF THE CITY OF CINCINNATI PROSECUTOR
    801 PLUM STREET
    ROOM 226
    CINCINNATI, OHIO 45202

HAMILTON COUNTY COURT OF COMMON PLEAS
    230 E. NINTH ST.
    SUITE 4000
    CINCINNATI, OHIO 45202

OFFICE OF THE HAMILTON COUNTY PROSECUTOR
    230 E. NINTH ST.
    SUITE 4000
    CINCINNATI, OHIO 45202

        DEFENDANTS

**Case No.**

1:19CV156 1

T. DLOTT

M.J. LITKOVITZ

**COMPLAINT**

RECEIVED

FEB 2 2019

RICHARD W. NAGEL
Clerk Of Court
CINCINNATI, OHIO

## I. Subject Matter Jurisdiction

Original jurisdiction conferred on this court under 18 U.S. Code § 241; 18 U.S. Code § 242; 28 U.S. Code § 1331; 28 U.S. Code § 1343(a)(1); 28 U.S. Code § 1343(a)(2); 28 U.S. Code § 1343(a)(3); 42 U.S. Code § 1983; 42 U.S. Code § 1985(3); 42 U.S. Code § 1986;

Supplemental jurisdiction under 28 U.S. Code § 1367 authorizes this court to hear state claims relating to O.R.C. 9.86; R.C. 2307.60; O.R.C. 2743.02(A)(1); O.R.C. 2921.03(C); O.R.C. 2921.44 (B); O.R.C. 2921.41(A);O.R.C. 2921.44(E); O.R.C. 2923.32(A)(1); O.R.C. 2923.34(A); O.R.C. 2923.34(J); O.R.C. 2921.52(E)

This court is the proper venue for this action pursuant to 28 U.S. Codes §§ 1391(b)(1) & 1391(b)(2).

**O.R.C. 2923.34(J):** ...a civil proceeding or action under this section may be commenced at any time within five years after the unlawful conduct terminates **or the cause of action accrues**...

**28 U.S. Code § 1331:** The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**O.R.C. 2744.09(E):** This chapter does not apply to, and shall not be construed to apply to...Civil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions

## *II. Statements of Claim*

### *A.  § 42 U.S.C. 1983 -- United States Constitution*

(1)      All Defendants, acting under color of law, have violated rights secured to the Plaintiff by the Sixth and Fourteenth Amendment to the United States Constitution including the right to due process of law, and the right to equal protection under the law.

***B. 18 U.S. Code § 241. Conspiracy against rights, 18 U.S. Code § 242. Deprivation of rights under color of law, 42 U.S. Code § 1985. Conspiracy to interfere with civil rights, 42 U.S. Code § 1986. Action for neglect to prevent.***

(2)     All five Defendants (and the employees identified by name acting on the

Defendants' behalf) have conspired together, have exchanged information about (and

therefore had knowledge of the wrongdoings conspiring to be done and could have

prevented injury) and neglected and/or refused to do so with purpose to further the

conspiracy with the object of the conspiracy being: to hinder, prevent, and/or intimidate

the Plaintiff from exposing the scheme to defraud and thereby being able to hold those

furthering the conspiracy accountable for their acts.

***C.*** **State** ***Constitution***

(3)     All Defendants have violated rights secured to the Plaintiff blass by the Ohio

Constitution, including the right to be free from unreasonable searches and seizures under

Art. I, Sec. 14 and the right to due process and equal protection under the law, as well as

the right to reasonable protection from those accused or any person(s) acting on behalf of

those accused under Art. I, ***Sec. 10a(A)(4)***.

***D. Facts regarding Defendant's the Office of the Hamilton County Prosecutor & the Hamilton County Court of Common Pleas & their role in the conspiracy to intimidate, deprive, & defraud the Plaintiff.***

(4)     The Hamilton County Prosecutor's Office by and through the named Defendants

working within it -- all being sued in both their individual and professional capacities

notwithstanding a finding by this Court that their actions were within the scope of their

official duties as public officials -- ( Joseph T. Deters, Anthony Strike, Joseph Prem,

Esq., Robert Vick, Esq., Elizabeth Vollmer Polston, Esq., & Zachary K. Garrison) did

violate Federal and State of Ohio law by conspiring to engage in corrupt activities with

3

the Defendants: the City of Cincinnati, the Hamilton County Court of Common Pleas,

(former) Magistrate Michael L. Bachman, Esq., the Cincinnati Police Department by and

through Todd Ploehs, the Hamilton County Sheriff's Department, the Office of the

Cincinnati Prosecutor by and through Jonathan Rengering, Esq., and John Z. Kessler,

Esq., (non-party co-conspirator) Charles A. McKinney, Esq., (non-party co-conspirator)

Andrew B. Niehaus, the Loveland Police Department, & (non-party co-conspirator) Carla

Dreyer, Psy.D. -- to defraud and injure the Plaintiff by doing the following:

(5)　　Knowingly using an unlawfully issued temporary order of protection to obtain an

indictment against the Plaintiff on or around January 16, 2018. The Hamilton County

Prosecutor's Office did conceal the fact that the temporary order of protection had been

unlawfully issued, and presented the indictment obtained with the sham legal process to

the Plaintiff on or around January 16, 2018. Ohio's Revised Code Section 2903.214(C)

states that:

> A person may seek relief under this section for the person, or any parent or
> adult household member may seek relief under this section on behalf of
> any other family or household member, by filing a petition with the court.

It's necessary to cite the General Assembly's definition of *who* may seek relief under

section 2903.214 as the authority to make the assertion that the temporary order referred

to throughout this complaint is sham legal process; it's also necessary to cite the General

Assembly's operating procedure for how to proceed once a petition seeking relief under

section 2903.214 has been filed:

> *If a person who files a petition pursuant to this section requests an ex
> parte order*, the court shall hold an ex parte hearing as soon as possible
> after the petition is filed, but not later than the next day that the court is in
> session after the petition is filed. The court, for good cause shown *at the ex
> parte hearing*, may enter any temporary orders, with or without bond, that

4

the court finds necessary for the safety and protection of the person to be protected by the order… See *R.C. 2903.214(D)(1)*.
***
*If a person who files a petition pursuant to this section does not request an ex parte order*…the court shall proceed as in a normal civil action and grant a full hearing on the matter. See *R.C. 2903.214(D)(3)*.

It logically follows from, the statute itself, that the only person(s) who can seek relief under section 2903.214 are the person herself and/or "*any parent or adult household member…on behalf of any other family or household member*." Because the legislature has specified *who* may petition for relief under this part of the code, then it follows that only those persons to whom the legislature has explicitly *reserved* this power *for* have the ability to request an ex-parte hearing; it then follows that *if* the person within whom the power lies -- under this part of the code -- *has not requested* an ex-parte hearing, R.C. 2903.214 -- *as enacted* -- requires the Court to "proceed as in a normal civil action and grant a full hearing on the matter." Even Hamilton County's Loc. R. 37(C)(1) makes clear that the guiding factor for the Court is *if the Petitioner requests* an ex-parte hearing. For those reasons, the Plaintiff is able to make the assertion that it was unlawful[1] for (former) Magistrate Magistrate Michael L. Bachman to (i) hold an ex-parte hearing and (ii) then issue a temporary order of protection *when the Petitioner did not request an ex-parte hearing*[2].

---

[1] 'Lawfully issued" means…issued, or rendered in accordance with the United States constitution, the constitution of a state, and the applicable statutes, rules, regulations, and ordinances of the United States, a state, and the political subdivisions of a state." See *R.C. 2921.52(A)(1)*.

[2] Plaintiff has a copy of the original Petition for the CSPO filed on June 29, 2017, and the Petition shows that the Petitioner did not ask the Court for an ex-parte hearing. Therefore, the Court was to proceed *as in a normal civil action* according to 2903.214(D)(3).

5

(6)     On January 26, 2018, in the Hamilton County Courthouse, the Hamilton County

Prosecutor's Office, by and through Amanda Tholke, Esq., did participate in the

conspiracy to defraud the Plaintiff by facilitating the concealment of the material fact that

the temporary order of protection had been *unlawfully issued*, in violation of R.C.

2921.12(A)(1). Furthermore, at the arraignment on January 26, 2018, the Hamilton

County Prosecutor's Office conspired with Defendant Bachman when he set a bond of

$20,000 for the charge that was brought using the sham legal process Defendant

Bachman had issued on June 29, 2017. As the Hamilton County Prosecutor's Office is a

public official for the purposes of this lawsuit, it knew that using its office to facilitate a

theft offense was unlawful. It nonetheless proceeded to consent to its office being used as

a means to tamper with evidence in order to defraud the Plaintiff, in violation of R.C.

2913.01(K)(3) -- by way of R.C. 2921.12(A)(2) -- by concealing the material facts that

the (1) tpo was unlawfully issued, and (2) the indictment had been obtained using the

sham legal process.

(7)     From on or around January 10, 2018 to the present, the Hamilton County

Prosecutor's Office began using the same sham legal process issued by (former)

Magistrate Bachman -- and the indictment obtained using the sham legal process -- as a

means to intimidate the Plaintiff from discharging his duty as the witness and victim of

the crimes mentioned throughout this complaint. The Plaintiff has known that the

temporary order of protection was unlawfully issued for quite some time, and has

mentioned that persons associated with the Hamilton County Prosecutor's Office have

concealed this fact by means of deception. For example, on February 6th, 2018, the

6

Hamilton County Prosecutor's Office did ask a Hamilton County Court of Common Pleas Judge to order Mr. Kanu to undergo a competency to stand trial evaluation. ("*Ms. Polston*: It is my understanding that in the municipal cases that there was a similar motion Judge, and the officer just told me that he was actually ordered to undergo a competency evaluation...Again, just based on the amount that has been filed..."- *State vs. Kanu*, Hamilton Cty. Ct. of Common Pleas, Case No. B1800225, *Transcript of Proceedings*, February 6, 2018). Because the indictment was obtained using sham legal process, the Hamilton Prosecutor's Office's use of the indictment to as a means to raise the issue of competency to stand trial for fraudulently brought charges is an overt action in furtherance of the conspiracy to defraud Mr. Kanu.

(8)     From on or around July 1, 2017 until September 20, 2018, the Hamilton County Prosecutor's Office did participate in a scheme to defraud the Plaintiff when it brought and pursued charges of violating the unlawfully issued protection order. In addition to using the sham legal process to pursue a charge against the Plaintiff, the Hamilton County Prosecutor's Office (HCPO) concealed evidence relevant to the Plaintiff's innocence, going so far as to when "**in [an] official proceeding, [the Hamilton County Prosecutor's Office by and through Defendant Joseph Prem, Esq.] did knowingly [make] false statement['s] under oath or affirmation, [and] knowingly [swear and] affirm the truth of false statement['s] previously made, when [the] statement [were] material[,]**" in violation of Ohio's Revised Code, Section 2921.52(B)(4); during an official proceeding, Defendants Prem and the HCPO participated in engaging in a pattern of corrupt activity, in violation of O.R.C. 2923.32 (A)(1), by stating:

7

*Mr. Prem*: The notion that the State may not be able to prevail on one of
the elements of the offense when the State has already established in this
case I believe we have more than probable cause to go forward. That is a
trial issue, Judge. That is a Motion to Dismiss issue. So we would ask you
to deny the motion on that ground. I would join in the City in saying that
even if the allegations in the defendant's motion about attorney conduct
were true, which counties that misrepresentation of the law, this is not the
appropriate venue for those. *State vs. Kanu*, Hamilton Cty. Muni. Ct., Case
No. C-17-CRB-17911, *Transcript of Proceedings*, August 21, 2018.

(9)       From on or around January 10, 2018 until on or around September 20, 2018, the

Hamilton County Prosecutor's Office did conspire with and did assist *the enterprise* --

consisting of the HCPO (including but not limited to Joseph T. Deters, Esq., Robert Vick,

Esq., Elizabeth Vollmer Polston, Esq., & Zachary K. Garrison, Esq.), the Office of the

Cincinnati Prosecutor (including but not limited to Jonathan Rengering, Esq. & John Z.

Kessler, Esq.), the Loveland Police Department, the Hamilton County Sheriff's

Department, the City of Cincinnati, the Hamilton County Court of Common Pleas, the

Cincinnati Police Department (including but not limited to Todd Ploehs), (non-party

co-conspirator) Charles McKinney, Esq., and (former) Hamilton County Common Pleas

Magistrate Michael L. Bachman, Esq. (henceforth known as *the enterprise*) -- when the

HCPO (by and through Prem) -- acting under color of law through the power of the office

of the Hamilton County Prosecutor -- agreed to conceal exculpatory material relevant to

the then-ongoing investigation in case no. C-17-CRB-17911. The record being concealed

was a county writ -- that was issued as a result of the sham legal process -- showing that

the proof of service of the (unlawfully issued, sham) temporary order of protection had

been made on July 7, 2017; the Hamilton County Prosecutor's Office's (*HCPO*) pursued

the charges against the Plaintiff in that case by concealing the county writ, claiming that

the Plaintiff had been served with the unlawfully issued legal process on June 29, 2017.
Furthermore, despite the fact that Todd Ploehs of the Cincinnati Police Department and
the City of Cincinnati had written on the complaint in a case being prosecuted by the
HCPO that the Plaintiff was served with the (unlawfully issued, sham) legal process on
July 7, 2017 (case no. B1800225), the Hamilton County Prosecutor's Office -- by and
through Prem, Vollmer Polston, Vick,Strike, and Garrison -- continued to participate in
the conspiracy to conceal the *Hamilton County Sheriff's County Writ*, and continued to
pursue charges against the Plaintiff, standing by the falsely reported date of service of the
(unlawfully issued, sham) legal process as June 29, 2017.

(10)    The HCPO (by and through Prem), did conspire with *the enterprise* to obstruct
justice from at least August 13, 2018 to September 20, 2018, when Prem did assist *the*
*enterprise* -- acting under color of law through the power of the office of the Hamilton
County Prosecutor --  in benefiting from the commission of a crime by concealing
physical evidence in the form of the Hamilton County Sheriff Department's County Writ
from a Hamilton County Municipal Court Judge, when he knew said writ was material to
an ongoing investigation that proved Plaintiff had not been served official process on
June 29, 2017.

(11)    The Defendant, the HCPO (by and through Joseph Prem, Esq.), did conspire to
deprive Mr. Kanu of his right to due process, in violation of 18 U.S. Code § 241 &
O.R.C. 2921.12 (A) when they attempted to use a record [while concealing another],
document, or thing, knowing it to be false and with purpose to mislead a public official
who [was] or [may have been] engaged in [a] proceeding or investigation with purpose to

9

corrupt that proceeding. The Defendants were acting under color of law, in violation of

18 U.S. Code § 242, & O.R.C. 2921.44(E) when they "recklessly fail[ed] to perform a

duty expressly imposed by law with respect to the public servant's office, or recklessly

d[id] [an] act expressly forbidden by law with respect to the public servant's office" See

*R.C. 2921.44 (E)*. The HCPO & Prem., did "negligently fail to perform a lawful duty in a

criminal case or proceeding." See O.*R.C. 2921.44(B)*.

(12)    The HCPO also did "commit [the] theft offense[s of] [telecommunications fraud,

and tampering with evidence]...us[ing] the [Hamilton County Prosecutor's] office in aid

of committing the offense or permit[ing] or assent[ing] to its use in aid of committing the

offense[s][,]" in violation of O.R.C. 2921.41(A)(1) and in furtherance of *the enterprises*

conspiracy to defraud the Plaintiff.

(13)    The HCPO, had a duty to the Plaintiff based on the HCPO's foreknowledge of a

Prosecutor's duty to disclose exculpatory material and to not use sham legal process, and

that duty was breached when the HCPO knowingly tampered with evidence by

concealing exculpatory material while *using sham legal process* (all while knowing the

legal process was issued unlawfully). "A defendant breaches its duty of care to a plaintiff

when the defendant fails to exercise the degree of care that an ordinarily reasonable and

prudent person would exercise under the same or similar circumstances." *Mussivand v.*

*David*, 45 Ohio St. 3d 314, 544 N.E.2d 265 (1989).

(14)    Each time the HCPO "display[ed], deliver[ed], distribute[d], or otherwise use[d]

sham legal process," (such as in *States Response to Defendant's Demand for Discovery*

case no. B180225; *the Indictment, case no. B1800225; States Motion to Amend the*

10

*Indictment filed April 20, 2018, case no B1800225; States Response to Defendant's Demand for Discovery, case no. C-17-CRB-17911)* they violated O.R.C. 2921.52(B)(4) by way of their tampering with evidence (concealing, using, making, and/or presenting a document knowing it to be false is a felony of the third degree pursuant to O.R.C. 2921.12(B)). Since the HCPO was using the sham legal process to facilitate the commission of the offenses of tampering with evidence (case no. C-17-CRB-17911), telecommunications fraud, and intimidation (O.R.C. 2921.03(A) (and 42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3))), they violated specific legislative enactments (including but not limited to O.R.C. 2921.52(B)(3) & O.R.C. 2921.52(B)(4)). "In Eisenhuth, the court explained: 'The violation of any specific legislative enactment enacted for the protection of private persons is of itself such a breach of duty as to constitute negligence.'" See *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St. 3d 266 - Ohio: Supreme Court 2002, ¶99.

(15)     The HCPO, by and through Zachary K. Garrison, Esq. (0090563), did facilitate the commission of engaging in a pattern of corrupt activity when on September 27, 2017, Garrison attempted to use a record, document, or thing, knowing it to be false and with purpose to mislead a public official who was, or may have been, engaged in an official proceeding or investigation with purpose to corrupt that proceeding, contrary to and in violation of R.C. 2923.01 (A)(1) and R.C. 2923.01 (A)(2).

(16)     On July 14, 2017, (former) Magistrate Michael L. Bachman, Esq. (acting as and on behalf of the Hamilton County Court of Common Pleas) did conspire with the HCPO to intimidate the Plaintiff, and did participate in furthering the object of *the enterprises*

conspiracy by facilitating the HCPO to commit the theft offense of tampering with evidence when Bachman, knowing that the temporary order of protection was unlawfully issued, consented to the use of the Office of the Hamilton County Common Pleas Magistrate to detain and arrest the Plaintiff as a result of the Loveland Police Department filing a charge -- on July 1, 2017 -- of violating an order of protection. The HCPO, (by and through (but not limited to) Zachary K. Garrison, Esq., & Joseph Prem, Esq.) did use the (unlawfully issued) legal process to pursue a conviction against the Plaintiff, conspiring with the Hamilton County Court of Common Pleas to tamper with evidence by concealing the Hamilton County Sheriff's Department county writ that proved the Plaintiff had not been served with the (unlawfully issued) temporary order of protection on June 29, 2017. "*The Court*: All right. I want you to have seat right there. Yes, you. Have a seat right there. *The Respondent*: Right here? *The Court*: Right in the jury box, sir...*The Court*: Go ahead. Sit your ass on the ground. I don't care." *Malof v. Kanu*, Hamilton County Ct. of Common Pleas Civil Case No. SK1700816, *Transcript of Proceedings*, SK1700816 (7-14-2017).

(17)    In truth and in fact, the Plaintiff had not been served with the (unlawfully issued) temporary order of protection on June 29, 2017, and tried to inform Bachman of this fact on October 11, 2017. "*The Respondent*: Can I -- *The Court*: Yes, sir. *The Respondent:* That's exactly what happened last time, like I was -- *The Court*: Don't talk about the offense, sir, because you're being recorded. *The Respondent*: No, I'm not talking about it. *The Court*: Anything you say may be used against you. You have a case pending right now for violation of the order...*The Respondent*: If you don't let me talk me ever, like,

how can you even know that I was held overnight incorrectly? *The Court*: This isn't the place to defend yourself on that charge, sir. That would be in front of Judge Rucker at the appropriate time. I'm just telling you, anything you say here may be used against you in the criminal case. If I were you, I'd shut up." *Malof v. Kanu*, Hamilton County Ct. of Common Pleas Civil Case No. SK1700816, *Transcript of Proceedings*, SK1700816 (10-11-2017). As previously stated, since the temporary order of protection was unlawfully issued, Bachman was actively facilitating the concealment of the Hamilton County Sheriff's Department County writ proving that the Plaintiff had been served with the (unlawfully issued) legal process on July 7, 2017, in violation of O.R.C. 2921.41 (A)(1), O.R.C. 2921.12 (A)(2) O.R.C. 2921.03(A) (and 42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3)).

(18)     Specifically, the HCPO (by and through Garrison) did, knowingly utter and affirm the truth of an affidavit which is known to be false. Furthermore, on September 27, 2017, Zachary K. Garrison, having devised a scheme to defraud, did commit the overt act of transmitting and/or causing to be disseminated by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service a writing with purpose to execute or otherwise further the scheme to defraud when he filed the *State's Response to Defendant's Request for Discovery* which made use of the sham legal process.

(19)     Zachary K. Garrison, (acting on behalf of and as the HCPO) while conspiring with *the enterprise*, obstructed justice from at least July 28, 2017 to September 20, 2018, when he did assist *the enterprise* -- while acting under color of law through the power of

13

the Office of the Hamilton County Prosecutor -- in benefiting from the commission of a crime by concealing physical evidence in the form of the Hamilton County Sheriff Department's County Writ from two Hamilton County Municipal Court Judges, when he knew said writ was material to an ongoing investigation that proved Plaintiff had not been served official process on June 29, 2017.

(20)     Zachary K. Garrison, Esq. (acting on behalf of and as the HCPO), had a duty to the Plaintiff based on Garrison's foreknowledge of a Prosecutor's duty to disclose exculpatory material, and the foreseeability of injury resulting from the failure to disclose material information during an ongoing criminal investigation. The duty was breached when the assistant prosecutor purposely chose to conceal the exculpatory evidence. "[A] person has a duty to exercise reasonable care to avoid injury to others whenever he/she is 'placed in such a position with regard to another that it is obvious that if he does not use due care in his own conduct he will cause injury to that person.' [*Skillings v. Allen* (1919), 143 Minn. 323, 173 N.W.] at 663-64...Determining whether a duty exists is crucial since '[a] person's failure to exercise ordinary care in doing or failing to do something will not amount to actionable negligence unless such person owed to someone injured by such failure a duty to exercise such ordinary care.' *United States Fire Ins. Co. v. Paramount Fur Service, Inc.* (1959), 168 Ohio St. 431, 7 O.O. 2d 267, 156 N.E.2d 121, paragraph three of the syllabus." Citing *Mussivand v. David*, 45 Ohio St. 3d 314, 318 (Ohio 1989).

(21)     Elizabeth Vollmer Polston (acting as and on behalf of the HCPO), did conspire to deprive Mr. Kanu of his right to due process, in violation of 18 U.S. Code § 241 & R.C.

14

2921.12 (A) when she took the overt action of attempting to use a record, document, or thing, knowing it to be false and with purpose to mislead a public official who [was] or [may have been] engaged in [a] proceeding or investigation with purpose to corrupt that proceeding. Polston was acting under color of law, in violation of 18 U.S. Code § 242, 2921.44 (E) when she "recklessly fail[ed] to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly d[id][an] act expressly forbidden by law with respect to the public servant's office". See *R.C. 2921.44 (E)*. Polston did "negligently fail to perform a lawful duty in a criminal case or proceeding." See *R.C. 2921.44 (B)*.

(22)    Specifically, Elizabeth Vollmer Polston, Esq. (acting on behalf of and as the HCPO) did participate in engaging in a pattern of corrupt activity, in violation of R.C. 2923.32 (A)(1), when on or around April 20, 2018 she did take the overt action of filing a document and/or record in the Hamilton County Court of Clerks with purpose to assist *the enterprise* in benefiting from the commission of the crime of concealing physical evidence in the form of the Hamilton County Sheriff Department's County Writ from a Hamilton County Municipal Court Judge, when she knew said writ was material to an ongoing investigation. Vollmer Polston (as the HCPO) also used the sham legal process while filing the *States Response to Defendant's Demand for Discovery* with Hamilton County's Court of Clerk's as grounds to continue pursuing criminal charges against the Plaintiff, and also used sham legal process (knowing it to be unlawfully issued, sham legal process) while conspiring to conceal the physical evidence and aid the enterprise in benefiting from the concealment. ("***Ms. Polston:***...the officer just told me that he was

actually ordered to undergo a competency evaluation...Again, just based on the amount that has been filed...**Officer Ploehs**: My understanding was that he was scheduled to have a competency hearing on a -- I believe it was a Friday before we went -- because there's a civil protection order as well, beyond the misdemeanor charges. When we went to the civil protection order hearing, I believe that was on a Wednesday, these charges had been filed a day before we came in."- *State vs. Kanu*, Hamilton Cty. Ct. of Common Pleas, Case No. B1800225, *Transcript of Proceedings*, February 6, 2018). As the evidence will show, not only did Vollmer Polston (acting on behalf of and as the HCPO) assist the enterprise by concealing the fact that the temporary order of protection was sham legal process, but also by using that sham legal process during an ongoing investigation with purpose to corrupt the outcome of the investigation by deceptively trying to have the Plaintiff detained. Ultimately, the Plaintiff was detained from on or around February 21, 2018 until on or around March 26, 2018 as a result of Vollmer Polston (acting on behalf of and as the HCPO) participating and taking overt actions to tamper with evidence in furtherance of the scheme to defraud the Plaintiff.

(23)    In Polston's *Response to Defendant's Demand for Discovery*, she used and/or presented the sham legal process -- "Certified copy of protection order" -- with purpose to hinder the discovery of a theft in office and dereliction of duty by former Magistrate Michael L. Bachman, who issued the temporary order of protection on June 29, 2017. As previously stated, the temporary order of protection was unlawfully issued as defined by O.R.C. 2921.52(A)(4), and therefore in violation of O.R.C. 2921.03(A) (and 42 U.S.

Code § 1985(2) and 42 U.S. Code § 1985(3)), O.R.C. 2913.05 (A), O.R.C. 2921.44 (E),

O.R.C. 2921.41 (A)(1), & O.R.C. 2921.45 (A).

(24)    Elizabeth Vollmer Polston did knowingly conspire to violate Section

2905.01(B)(2) of Ohio's Revised Code when she, by deception, willingly participated in

the corrupt activity of *the enterprise* agreeing that one of them would commit a corrupt

activity, facilitating the enterprise in restraining the Plaintiff of his liberty through the use

of the gains of the (unlawfully issued) legal process.

(25)    From at least February 6, 2018 until April 20, 2018, in the Hamilton County

Court of Common Pleas, the HCPO (by and through Elizabeth Vollmer Polston, Esq.) --

while acting under color of law -- did knowingly conspire to interfere with Plaintiff's

civil rights, directly in violation of O.R.C. 2921.45 (A) and attempted to hinder the

Plaintiff from discharging his duty as the witness and victim of a crime, contrary to and

in violation of O.R.C. 2921.03(A) (and 42 U.S. Code § 1985(2) and 42 U.S. Code

§ 1985(3)).

(26)    Elizabeth Vollmer Polston, Esq., (while acting as the HCPO) had a duty to the

Plaintiff based on Polston's foreknowledge of a Prosecutor's duty to disclose exculpatory

material, and that duty was breached when the assistant prosecutor purposely chose to

conceal exculpatory evidence. "A defendant breaches its duty of care to a plaintiff when

the defendant fails to exercise the degree of care that an ordinarily reasonable and prudent

person would exercise under the same or similar circumstances." *Mussivand v. David*, 45

Ohio St. 3d 314, 544 N.E.2d 265 (1989). "A Prosecutor shall not prosecute or pursue a

charge the prosecutor knows is not supported by probable cause." See *Ohio Rule of*

*Professional Conduct 3.8 (a)*. "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate." See *Comment [1] to Ohio Rule of Professional Conduct 3.8*.

(27)     The HCPO, by and through Robert Vick, acting under color of law, did facilitate the commission of engaging in a pattern of corrupt activity when on or around September 27, 2018, Vick did present discovery evidence to the Plaintiff knowing it to have been tampered with -- as defined by O.R.C. 2921.12 (A)(2) -- with purpose to mislead a public official who was, or may have been, engaged in an official proceeding or investigation with purpose to corrupt that proceeding, contrary to and in violation of O.R.C. 2921.03(A) (and 42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3)), O.R.C. 2923.01 (A)(1), O.R.C. 2923.01 (A)(2) & O.R.C. 2921.12 (A)(2).

(28)     Robert Vick, as the HCPO, acted with the kind of culpability required for the commission of an offense and was therefore complicit when he aided and/or abetted *the enterprise* in their conspiracy to deprive the Plaintiff of his civil rights while acting under color of law.

(29)     Robert Vick, Esq. did conspire to obstruct justice from at least September 1, 2018 to September 20, 2018, when he did knowingly assist *the enterprise* in benefiting from the commission of a crime by concealing physical evidence in the form of the Hamilton County Sheriff Department's County Writ from a Hamilton County Municipal Court Judge, when he knew said writ was material to an ongoing investigation that proved Plaintiff had not been served (unlawfully issued) legal process on June 29, 2017.

18

(30)    Furthermore, in Vick's (representing the HCPO) *Response to Defendant's Demand for Discovery*, he did commit the overt act of using and/or presented a document -- "Certified copy of protection order" -- with purpose to hinder the discovery of a theft in office and dereliction of duty by former Magistrate Michael L. Bachman, who issued the temporary order of protection on June 29, 2017. The temporary order of protection issuance was in violation of O.R.C. 2913.05 (A), O.R.C. 2921.03(A) (and 42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3)), O.R.C. 2921.44 (E), O.R.C. 2921.41 (A)(1), & O.R.C. 2921.45 (A), and the former Magistrate did knowingly attempt to conceal his theft in office by citing the wrong statutory code, and in doing so furthered the scheme to defraud the Plaintiff by causing the *Magistrates Findings of Fact And Conclusions of Law, Malof v. Kanu* , Hamilton County Ct. of Common Pleas Civil Case No. SK1700816 to be transmitted by means of a telecommunications device; "Petitioner's allegations satisfied the requirements of R.C. 2903.213(C)(1)", See *Malof v. Kanu*, Hamilton County Ct. of Common Pleas Civil Case No. SK1700816, *Magistrates Findings of Fact And Conclusions of Law*. Plaintiff asserts the Petition for a Civil Stalking Protection Order in *Malof v. Kanu*, Hamilton County Ct. of Common Pleas Civil Case No. SK1700816 requested relief under R.C. 2903.214, not R.C. 2903.213. Furthermore, the Petitioner did not request an emergency ex parte hearing under R.C. 2903.214(D)(1) of Ohio's Revised Code.

(31)    The HCPO (by and through Vick) had a duty to the Plaintiff based on Vick's foreknowledge of a Prosecutor's duty to disclose exculpatory material, and that duty was breached when the assistant prosecutor purposely chose to conceal the exculpatory

evidence. "A defendant breaches its duty of care to a plaintiff when the defendant fails to exercise the degree of care that an ordinarily reasonable and prudent person would exercise under the same or similar circumstances." *Mussivand v. David*, 45 Ohio St. 3d 314, 544 N.E.2d 265 (1989).

(32)    Since February 19, 2019[3], the Hamilton County Court of Common Pleas has neglected to act on the allegations of the conspiracy to intimidate, obstruct justice, and defraud and deprive the Plaintiff, in violation of the Plaintiff's constitutionally protected right to equal protection under the law, and in violation of 42 U.S. Code § 1986 by and through 42 U.S. Code § 1985.

(33)    The result of the HCPO's and the Hamilton County Court of Common Pleas participating in furthering the object of the conspiracy of *the enterprise* -- by and through (former) Hamilton County Common Pleas Magistrate Michael L. Bachman, Esq., Zachary K. Garrison, Esq., Joseph Prem, Esq., Elizabeth Vollmer Polston, Esq., Joseph T. Deters, Esq., Anthony Strike, Esq., Robert Vick, Esq., Amy Tranter, Esq., & Stacy Lefton, Esq. -- and violations of the legislative anti-conspiracy enactments was that the Plaintiff suffered unlawful arrest, unlawful detainment, economic loss, competitive

---

[3] Plaintiff wrote in his *Request for Reconsideration* (case no. B1800225):

Since Mr. Kanu is alleging that the order of protection is sham legal process, wouldn't that make Mr. Kanu a 'witness' to a crime, as defined by R.C. 2921.04(E)? "'[W]itness' means any person who has or claims to have knowledge concerning a fact or facts concerning a criminal act...whether or not criminal...charges are actually filed." Since, as statutorily defined, Mr. Kanu is a witness who claims to have knowledge concerning facts concerning a criminal act, wouldn't the State of Ohio -- by and through the Hamilton County Prosecutor's Office -- requesting further evaluations in bad faith be "attempt[ing] to influence, intimidate, or hinder a...witness in the discharge of the person's duty"? Citing R.C. 2921.03(A). If so, wouldn't that be a violation of R.C. 2921.52(B)(4)? "[U]nder subsection (B)[4]), not only must one 'use sham legal process,' but he must do it while 'committing or facilitating the commission of an offense.'" [State v.] Martin [Unpublished Decision, 2006 Ohio 6202 (Ohio Ct. App. 2006)], ¶ 54.

injury, injury as a result of the corrupt activities, loss of reputation, emotional harm and mental distress as the natural cause of the HCPO and the Hamilton County Court of Common Pleas engaging in the corrupt activities of tampering with evidence, using sham legal process, telecommunications fraud, intimidation, & theft in office. Plaintiff seeks damages against the HCPO, the Hamilton County Court of Common Pleas, and any Defendant who this Court finds is individually liable for their actions under the theory of common law negligence, specific-statutory-enactment-negligence, damages from civil action for damages from a criminal act under Ohio Revised Code Section 2307.60 (A), and damages from civil action under Ohio Revised Code Sections 2921.03(C), 2923.34(A), 2923.34 (E), and 2921.51 (E). "Accordingly, for a plaintiff to claim *negligence per se*, he or she must present evidence that: (1) there is a legislative enactment that imposes a specific duty upon the defendant for the safety and protection of a person in plaintiff's position; (2) the defendant failed to observe the enactment; and (3) that failure proximately caused his or her injury." See *Gressman v. McClain*, (1988), 40 Ohio St.3d 359, 362. "If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone. *Neff Lumber Co. v. First National Bank of St. Clairsville, Admr.*, 122 Ohio St. 302, 309, 171 N.E. 327. *Mudrich v. Standard Oil Co.*, (1950), 153 Ohio St. 31, 39, 41 O.O. 117, 121, 90 N.E.2d 859, 863." See *Mussivand v. David*, 45 Ohio St. 3d 314, 318 (Ohio 1989). Plaintiff can and will provide evidence that

21

the corrupt activities have resulted in the Plaintiff having a bond for total of 603 days

(and counting) broken down as follows: 30 days at $50,000, and 178 days at $10,000,

totaling $3,280,000 in actual damages (case no C-17-CRB-17911), and 409 days (and

counting) at $20,000, totaling $8,180,000 in actual damages and counting (case no

B1800225) *for a total:  of $11,460,000 in actual damages and counting while case no.*

*B1800225 is pending in the Hamilton County Court of Common Pleas.*

### E. Facts Regarding Defendant's City of Cincinnati, Office of the Cincinnati Prosecutor, City of Cincinnati Police Department and the Hamilton County Court of Common Pleas & their role in the conspiracy to intimidate, deprive, & defraud the Plaintiff.

(34)     The City of Cincinnati, Office of the Cincinnati Prosecutor, and the City of

Cincinnati Police Department (District 4) (by and through the named employees

performing governmental functions and committing acts that "constitute...violation[s]

of...Chapter 2921. of the Revised Code" (citing O.R.C. 2744.07(A)(2)(ii)) (Assistant to

the City of Cincinnati Prosecutor Jonathan Rengering, Esq., Andrew B. Niehaus, Esq., &

(former) Hamilton County Common Pleas Magistrate Michael Louis Bachman) -- all

being sued in both their individual and professional capacities notwithstanding a finding

by this Court that their actions were within the scope of their official duties as public

officials -- did violate Federal and State of Ohio law by conspiring to engage in corrupt

activities of *the enterprise* along with the HCPO, (non-party co-conspirator) Charles A.

McKinney, Esq., the Loveland Police Department, & (non-party co-conspirator) Carla

Dreyer, Psy.D. -- to defraud, intimidate, and injure the Plaintiff by engaging in the

following corrupt activities (contrary to and in violation of Ohio's anti-corruption laws

(O.R.C. 2921.32(A)(1)-(A)(3))):

22

(35)    On June 29, 2017, (former) Hamilton County Common Pleas Magistrate Michael

L. Bachman (acting on behalf of and as the Hamilton County Court of Common Pleas)

issued a temporary order of protection unlawfully, in violation of O.R.C. 2921.52(B)(3),

O.R.C. 2913.05 (A), O.R.C. 2921.44 (E), O.R.C. 2921.41 (A)(1), & O.R.C. 2921.45 (A),

and the former Magistrate did knowingly attempt to conceal his theft in office by citing

the wrong statutory code, and in doing so furthered a scheme to defraud the Plaintiff by

causing the *Magistrates Findings of Fact And Conclusions of Law, Malof v. Kanu* ,

Hamilton County Ct. of Common Pleas Civil Case No. SK1700816 to be transmitted by

means of a telecommunications device; "***Petitioner's allegations satisfied the***

***requirements of R.C. 2903.213(C)(1)***", citing *Malof v. Kanu*, Hamilton County Ct. of

Common Pleas Civil Case No. SK1700816, *Magistrates Findings of Fact And*

*Conclusions of Law*. Plaintiff asserts the Petition for a Civil Stalking Protection Order in

*Malof v. Kanu*, Hamilton County Ct. of Common Pleas Civil Case No. SK1700816

requested relief under R.C. 2903.214, not R.C. 2903.213. Furthermore, the Petitioner did

not request an emergency ex parte hearing under R.C. 2903.214(D)(1) of Ohio's Revised

Code.

(36)    In furtherance of the conspiracy to defraud the Plaintiff, the (former) Magistrate

(acting on behalf of and as the Hamilton County Court of Common Pleas) did participate

in the enterprise by going on to make and file, "***Therefore, the court issued an ex-parte***

***civil protection order and the or was served on the Respondent on June 29, 2017.***"

Citing *Malof v. Kanu*, Hamilton County Ct. of Common Pleas Civil Case No.

SK1700816, *Magistrates Findings of Fact And Conclusions of Law* - April 19, 2018. The

(former) Magistrate knew this to be a false statement, and made knowing that he was

facilitating the enterprise in their use of the sham legal process (case no.

C-17-CRB-17911). In truth and in fact, the Plaintiff had tried to inform the (former)

Magistrate that he was not served with the (what turned out to be unlawfully issued )

legal process until July 7, 2017. In addition to this fact, by April 19, 2018, the Plaintiff

had been charged (case no. B1800225), and it was in Bachman's courtroom that the

Plaintiff was (unlawfully) arrested after the sham legal process had been used to obtain a

warrant for the arrest of the Plaintiff.

(37)   On or around December 18, 2017, the City of Cincinnati (by and through the

Office of the Cincinnati Prosecutor's Office (by and through Jonathan Rengering)) did

tamper with evidence and engage in conduct constituting *intimidation* when Jonathan

Rengering "made" *State's Motion for Competency Evaluation of Defendant*,

"[a]...document...knowing it to be false and with purpose to mislead a public

official...[and] with purpose to corrupt the outcome of [the] investigations" (See O.R.C.

2921.12(A)(2)) of cases 17-CRB-16366 and C-17-CRB-17911, by "fil[ing]...a materially

false [and/]or fraudulent writing with malicious purpose, in bad faith, or in a wanton or

reckless manner...attempt[ing] to influence, intimidate, or hinder...[a] witness in the

discharge of the person's duty," contrary to and in violation of O.R.C. 2921.03(A) (and

42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3)), and O.R.C. 2921.32(A)(1).

(38)   "In that false document, Rengering (acting as the City of Cincinnati and as the

Office of the Cincinnati Prosecutor) wrote, "[Plaintiff] instead believes in a wide-ranging

conspiracy at all levels of government is out to get him[,]" while raising the issue of the

Plaintiff's competency to stand trial. In truth and in fact, Rengering knew at the time that *the enterprise* was conspiring to defraud the Plaintiff. As has been previously described, the HCPO at the time was concealing the Hamilton County Sheriff's Department proving that the (unlawfully issued, sham) legal process had been served on the Plaintiff on July 7, 2017. As case no. C-17-CRB-17911 was still open at the time of the City of Cincinnati's court filing, the document was made with purpose to corrupt the outcome of the investigation into the use of (what turned out to be sham legal process) to pursue charges against the Plaintiff. Furthermore, because *the enterprise* was subpoenaing the same witness to court, it is a fact that the City of Cincinnati and the Office of the Cincinnati Prosecutor were conspiring to use sham legal process to defraud the Plaintiff after having devised a scheme, contrary to and in violation of O.R.C. 2913.05(A). Plaintiff is in possession of the subpoenas from cases 17-CRB-16366 and C-17-CRB-17911, and the court records will show that in truth and in fact the HCPO was subpoenaing the same witness to appear in the same courtroom at the same time and place as the City of Cincinnati and the Office of the Cincinnati Prosecutor (November 2, 2017). As such, because the evidence will show that a deputy Holingsworth of the Hamilton County Sheriff's Department was also being subpoenaed on the same day to appear at the same time and place, any argument that the City of Cincinnati (by and through the Office of the Cincinnati prosecutor) was unaware that the HCPO was conspiring to conceal exculpatory material relevant to the ongoing investigation in case C-17-CRB-17911 should be meritless. Especially in light of the fact and truth of the matter that the HCPO and the Office of the Cincinnati Prosecutor were listed as a witness

25

in two separate cases the same Todd Ploehs of the City of Cincinnati and of the

Cincinnati Police Department.

(39)     On January 8, 2018, the Cincinnati Police Department and the City of Cincinnati

(by and through Todd Ploehs) did conspire with *the enterprise* by using the sham legal

process to obtain a warrant for the arrest of the Plaintiff. In the affidavit, Ploehs (acting

on behalf of and as the city of Cincinnati and on behalf of and as the Cincinnati Police

Department) wrote that, "[Plaintiff] was served with the CPO order on 07-07-17 by the

Hamilton County Sheriff's Office." Ploehs, who was present when Bachman had

unlawfully issued the temporary order of protection (***The Court:** P-l-o-e-h-s,*

*correct?...**The Court:** Okay. So he's been charged with telecommunications harassment

in Case 17/CRB/16366, right?...**The Detective:** Your Honor, I think he's supposed to go

for arraignment this afternoon at 12:30...**The Detective:** 12:30, Room A...**The

Detective:**...Is there any way we can serve him today or not?...**The Court:** We can try.

We can let the sheriff's office know & as long as he shows up, we'll give it a shot...**The

Detective:** I'll keep in contact with the sheriff's department today & see what they find.

**The Court:** Thank you, sir. Malof v. Kanu, Hamilton County Ct. of Common Pleas Civil

Case No. SK1700816, *Ex Parte Hearing - Transcript of Proceedings*, SK1700816

(6-29-2017)), knew at the time that the Plaintiff was charged with violating the

unlawfully issued order of protection in case no C-17-CRB-17911, and that the enterprise

was conspiring to conceal the Hamilton County Sheriff's Writ proving that the Plaintiff

was served with the (unlawfully issued) legal process on July 7, 2017. Ploehs, (acting on

behalf of and as the city of Cincinnati, and the Cincinnati Police Department) actually left

a voicemail on the Plaintiff's telephone on or around June 30, 2017 from an unknown number *after* the Plaintiff had been questioned by the Loveland Police Department. Since Ploehs had telephoned the Plaintiff *after* the Loveland Police Department had opened an inquiry into the (unlawfully issued) temporary order of protection, in truth and in fact Ploehs has known since June 30, 2017 that the Plaintiff was not served with the (unlawfully issued) legal process on June 29, 2017. The City of Cincinnati and the Cincinnati Police Department (by and through Ploehs) agreed to participate in the conspiracy to conceal this exculpatory material information, thereby agreeing to the use of the public office held by the Cincinnati Police Department in the theft offense of tampering with evidence and telecommunications fraud when there was an ongoing investigation, and the purpose was to corrupt the outcome of the investigation and/or mislead the public officials looking into that matter.

(40)    Between January 8, 2018 and January 10, 2018, the Cincinnati Police Department and the City of Cincinnati (by and through Todd Ploehs) did use the sham legal process issued by the Hamilton County Court of Common Pleas (by and through (former) Magistrate Bachman) to obtain a warrant to unlawfully arrest and detain the Plaintiff in an effort to intimidate him from discharging his duty as the witness of the crime after he had asked for the disqualification of the (former) Magistrate. The Plaintiff had written to the Supreme Court of Ohio about Bachman, and subsequently had asked the Equity Judge to remove him from the case due to Bachman unlawfully detaining him on July 14, 2017 due to the warrant that had been issued as a result of the Loveland Police Department

charging the Plaintiff with violating the (what turned out to be unlawfully issued, sham) legal process.

(41)     On January 10, 2018, the Hamilton County Sheriff's Department and (former) Magistrate Michael L. Bachman (acting as the Hamilton County Court of Common Pleas) did agree to use sham legal process to arrest the plaintiff in room 585 of the Hamilton County Courthouse after Todd Ploehs (acting on behalf of the City of Cincinnati and as the Cincinnati Police Department) had a warrant issued using the sham legal process that had been issued by Bachman on June 29, 2017.

(42)     On January 16, 2018, the Hamilton County Sheriff's Department and the Hamilton County Court of Common Pleas did conspire to use sham legal process to deliver an indictment to the Plaintiff after using the sham legal process to obtain an indictment, thereby tampering with evidence material to an ongoing investigation.

(43)     On January 26, 2018, the Hamilton County Court of Common Pleas, (by and through the Office of the Hamilton County Public Defenders (by and through Andrew B. Niehaus)) did conspire to tamper with evidence by removing a document from his file before giving it to the Plaintiff, with the Hamilton County Court of Common Pleas being fully aware (by and through (former) Hamilton County Common Pleas Magistrate Michael L. Bachman) to benefit Bachman who had committed a theft in office when he unlawfully issued the temporary order of protection used to obtain the indictment for which the Plaintiff was arraigned on January 26, 2018 in room 585 of the Hamilton County Courthouse. Bachman and Niehaus, knowing they were facilitating a fraud, did communicate false information to the Plaintiff, leading him to believe that Niehaus was

28

being removed as Defense Counsel to allow the Plaintiff to represent himself *Pro Se* in case no. B1800225. In truth and in fact, Niehaus was not removed until February 6, 2018 by another judge acting on behalf of and at the direction of the Hamilton County Court of Common Pleas, despite the fact that Bachman and Niehaus had communicated otherwise on January 26, 2018. (*The Court*: No. Timeout. Now you listen to me. I'm denying your motion, I'm going to grant Mr. Niehaus's motion. He has a basis to withdraw. I'm allowing him to withdraw. Your stated situation at this point was that you want to represent yourself. Is that correct?...*The Court*: So, as I said before, I'm denying [The Plaintiff's] motion to remove you. I am granting your motion to be relieved of duty on this case. *Mr. Niehaus*: Thank you, Your Honor. *The Court*: [The Plaintiff] has indicated he wishes to proceed pro se. That's fine. *State of Ohio v. Kanu*, Hamilton County Ct. of Common Pleas, B1800225, *Arraignment- Transcript of Proceedings* (1-26-2018); *The Court:* Mr. Kanu is present in court with Mr. Niehaus, his attorney....I conferred with Mr. Niehaus and the prosecutor in chambers this morning...he is right now your lawyer. He doesn't just stop being your lawyer until I say he stops being your lawyer...So the Court will grant Mr. Niehaus's motion to withdraw. S*tate of Ohio v. Kanu*, Hamilton County Ct. of Common Pleas, B1800225, *Transcript of Proceedings* (2-6-2018)). In truth and in fact, Niehaus had already submitted a *Motion and Certification for Approval of Appointed Counsel Fees* stating that he was no longer representing the Plaintiff on January 30, 2018. That *Motion For Approval of Appointed Counsel Fees and* was signed by Hamilton County (by and through Common Pleas Judge Kurt Hartmann) on February 6, 2018, not by Bachman on January 26, 2018. As such, both Bachman and Niehaus

29

communicated false information to the Plaintiff in order to facilitate the scheme to defraud the Plaintiff. In actuality, Niehaus was conspiring to engage in a pattern of corrupt activity with Bachman to conceal the fact that Bachman was consenting to the use of his office to tamper with evidence, and to commit telecommunications fraud by causing to be disseminated, by means of a telecommunications device, the *Bond Entry*, which Bachman (as the Hamilton County Court of Common Pleas) did sign and enter into the record (case B1800225) on January 26, 2018, setting the Plaintiff's bond at $20,000.

(44)    On March 23, 2018, the City of Cincinnati (by and through the Office of the Cincinnati Prosecutor (by and through Jonathan Rengering)) did participate in *the enterprises* conspiracy by engaging in a corrupt activity when he made the following statement: "***Rengering***:...Your Honor. County and City...I do think that there is interest in this Court to maintain the order of the juris monitor which was a previous order and had been put in place. The felony court Judge ordered a cash bond along with a condition of EMD, but has given Mr. Kanu a condition of has to have it in place no later than April 4th or 5th I believe. I am just asking the Court to order the juris maintained until EMD equipment is in place just so that we don't have any gap in time between electronic monitoring devices..I don't know that that time line benefits the progression of the misdemeanor *cases* very well.." *City of Cincinnati v. Kanu*, Hamilton County Cty. Muni. Ct., 17-CRB-16366, *Transcript of Proceedings* (3-23-2018). Rengering knew at the time that the City of Cincinnati (by and through Ploehs) had been able to arrest and detain the Plaintiff using the unlawfully issued, sham legal process (issued on June 29, 2017), and

decided to take advantage of the fact that the Plaintiff was being detained at the time in

order to further the scheme to defraud the Plaintiff. It is, of course, Rengering who (on

December 18, 2017) filed the materially false and/or fraudulent *Motion for Competency*

*Evaluation of the Defendant*, which Polston (on February 6, 2018) admitted in open court

she was aware of (actions by both Polston as the HCPO and Rengering as the Office of

the Cincinnati Prosecutor and the City of Cincinnati that are in violation of R.C.

2923.32(A) (" No person, who knowingly has received any proceeds derived, directly or

indirectly, from a pattern of corrupt activity...shall use or invest, directly or indirectly,

any part of those proceeds, or any proceeds derived from the use or investment of any of

those proceeds...in the establishment or operation of any enterprise.")); ("***Ms. Polston***: ***It***

***is my understanding that in the municipal cases that there was a similar motion made***,

Judge, and the officer just told me that he was actually ordered to undergo a competency

evaluation...***The Court***: And what's he referring to? What's he referring to, in terms of

Judge Rucker? ***Officer Ploehs:*** The telecommunication harassment case, the

misdemeanor case that he currently had pending. ***The Court***: And what did Judge Rucker

indicate and decide? ***Officer Ploehs***: At that time he decided that there wouldn't be a

hearing issued, but this case has been going on since June of last year...I don't know who

that person was, if it was through Judge Bachman's courtroom for the civil protection

hearing, or if they determined after what happened with the issues with Judge Rucker that

that needed to be." S*tate of Ohio v. Kanu*, Hamilton County Ct. of Common Pleas,

B1800225, *Transcript of Proceedings* (2-6-2018)). Therefore, Rengering (as the Office of

the Cincinnati Prosecutor representing the City of Cincinnati) conspired with the HCPO

31

and the Cincinnati Police Department and benefited from the activities of *the enterprise* in their scheme to defraud the Plaintiff and to try and intimidate the Plaintiff, who was both a witness and victim of the conspiracy of *the enterprise*.

(45)    In truth and in fact, the City of Cincinnati and the Office of the Cincinnati Prosecutor (by and through Rengering) knew the Plaintiff had not been served a (unlawfully issued) temporary order of protection on June 29, 2017, and that (former) Hamilton County Court of Common Pleas Magistrate Michael L. Bachman was facilitating the pursuit of the conviction against the Plaintiff when Rengering filed the materially false *Motion for Competency Evaluation of the Defendant*. As has been previously explained in ¶17, the following exchanges with the (former) Magistrate had already taken place before the *Motion for Competency Evaluation of the Defendant* had been filed: ("***The Respondent***: Can I -- The Court: Yes, sir. The Respondent: That's exactly what happened last time, like I was -- ***The Court***: Don't talk about the offense, sir, because you're being recorded. ***The Respondent***: No, I'm not talking about it. ***The Court***: Anything you say may be used against you. You have a case pending right now for violation of the order...***The Respondent***: If you don't let me talk me ever, like, how can you even know that I was held overnight incorrectly? ***The Court***: This isn't the place to defend yourself on that charge, sir. That would be in front of Judge Rucker at the appropriate time. I'm just telling you, anything you say here may be used against you in the criminal case. If I were you, I'd shut up." *Malof v. Kanu*, Hamilton County Ct. of

32

Common Pleas Civil Case No. SK1700816, Transcript of Proceedings, SK1700816 (10-11-2017)).[4]

(46)    On July 14, 2017[5], acting as and on behalf of the Hamilton County Court of Common Pleas, (former) Magistrate Michael Bachman did facilitate the detainment of the Plaintiff by using a materially false and/or fraudulent record alleging that the Plaintiff had been served a copy of the (unlawfully issued) temporary order of protection on June 29, 2017. The Hamilton County Sheriff's Department did consent to its office being used to commit the theft offense of concealing the Hamilton County Sheriff's Writ to facilitate the crime of telecommunications fraud, which had occurred when the Loveland Police Department radioed Central Warrants on June 30, 2017, when a transmission was made over a wire affirming a previously false statement made that the Plaintiff had been served the (unlawfully issued) temporary order of protection on June 29, 2017.

(47)    The Loveland Police Department did receive by means of a wire a false radio communication affirming the false information that the Plaintiff had been served the (unlawfully issued) temporary order of protection on June 29, 2017 as a result of the Hamilton County Court of Common Pleas causing to be entered a record asserting that the Plaintiff was served with the (unlawfully issued) legal process on June 29, 2017. Because the Hamilton County Court of Common Pleas tampered with evidence by filing

---

[4] "As previously stated, since the temporary order of protection was unlawfully issued, Bachman was actively facilitating the concealment of the Hamilton County Sheriff's Department County writ proving that the Plaintiff had been served with the (unlawfully issued) legal process on July 7, 2017, in violation of O.R.C. 2921.41 (A)(1), O.R.C. 2921.12 (A)(2) O.R.C. 2921.03(A) (and 42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3))" See ¶17.

[5] "The Court: All right. I want you to have seat right there. Yes, you. Have a seat right there. The Respondent: Right here? The Court: Right in the jury box, sir...The Court: Go ahead. Sit your ass on the ground. I don't care." *Malof v. Kanu*, Hamilton County Ct. of Common Pleas Civil Case No. SK1700816, Transcript of Proceedings, SK1700816 (7-14-2017)". See ¶16.

a false writing with malicious purpose (and also caused materially false and/or fraudulent information to be transmitted over radio communication on June 30, 2017), the Loveland Police Department was led to believe the temporary order of protection was lawfully issued and had been served, when in truth and in fact neither of those was true. The Loveland Police Department's July 1, 2017 complaint affirms that the (unlawfully issued) temporary order of protection was issued by (former) Magistrate Michael Bachman on June 29, 2017. These materially false writings (alleging that the Plaintiff had been served with the (unlawfully issued) temporary order of protection on June 29, 2017) were used in the scheme by *the enterprise* (sworn complaint and affidavit) in case no C-17-CRB-17911 to further the object of the conspiracy, which was to intimidate and defraud the Plaintiff, in violation of O.R.C. 2921.03(A) (and 42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3)), and 42 U.S. Code § 1985.

(48)    Since January 10, 2018 to the present day, the Hamilton County Court of Common Pleas & the Hamilton County Sheriff's Department have assisted *the enterprise* by agreeing to conceal the fact that the (former) Magistrate unlawfully issued the temporary order of protection, thereby agreeing to conceal the theft in office by the (former) Hamilton County Common Pleas Magistrate (who was acting as the Hamilton County Court of Common Pleas at the time of the theft offense) and consenting to the attempt to intimidate the Plaintiff (contrary to and in violation of O.R.C. 2921.03(A) (as well as 42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3)), and Ohio anti-corrupt activity law).

(49)    Additionally, the Hamilton County Sheriff's Department agreed to the use of its

office in the commission of the theft offense of tampering with evidence for *the*

*enterprise* by consenting to use the office of the Hamilton County Sheriff to conceal a

county writ so as to make it unavailable in an ongoing investigation, as well as on July

1st, 2017, when case no. C-17-CRB-17911 was opened and the Plaintiff was charged

with violating the (unlawfully issued) temporary order of protection, despite the fact that

on July 1st 2017, a county writ existed showing that service (of the unlawfully issued

legal process) was not made on June 29, 2017.

(50)    On or around August 22, 2017 the City of Cincinnati  (by and through the Office

of the Cincinnati Prosecutor (by and through John Zachary Kessler)), having devised a

scheme to defraud, did knowingly commit the overt act of transmitting and/or causing to

be disseminated by means of a wire, radio, satellite, telecommunication,

telecommunications device, or telecommunications service a writing with purpose to

execute or otherwise further the scheme to defraud after knowingly agreeing to conceal

the ongoing conspiracy involving Todd Ploehs, who was listed as a witness in the *States*

*Response to the Defendant's Demand for Discovery*, filed that day in the Hamilton

County Courthouse. By August 22, 2017, the Plaintiff had already been charged with

violating the (unlawfully issued, sham) temporary order of protection, and therefore had

knowingly agreed to conceal the fact that the HCPO was using sham legal process to

pursue a conviction against the Plaintiff. As such, the City of Cincinnati (by and through

the Office of the Cincinnati Prosecutor (by and through Kessler)) agreed to use the office

of the Cincinnati Prosecutor to facilitate the commission of tampering with evidence

when it agreed to conceal the truth about its witness Todd Ploehs, who knew that the

(former) Hamilton County Common Pleas Magistrate, Bachman, had issued the

temporary order of protection unlawfully on June 29, 2017.

(51)     The City of Cincinnati and the Office of the Cincinnati Prosecutor (through both

Kessler and Rengering acting on behalf of and as the Office of the Cincinnati Prosecutor

and as the City of Cincinnati), while conspiring with *the enterprise*, have obstructed

justice and tampered with evidence from June 29, 2017 to the present day by agreeing to

assist *the enterprise* -- while acting under color of law through the power of the Office of

the Cincinnati Prosecutor -- in benefiting from the commission of a crime by concealing

the fact that Ploehs (acting as the City of Cincinnati and the Cincinnati Police

Department) has been aware since June 29, 2017 that the temporary order of protection

was issued unlawfully when that information is material to an ongoing investigation that

proves Ploehs' involvement in the conspiracy to defraud the plaintiff, and of the theft in

office by the Hamilton County Court of Common Pleas (by and through (former)

Hamilton County Common Pleas Magistrate Michael L. Bachman).

(52)     From at least June 29, 2017 until the present day, the City of Cincinnati (by and

through the Cincinnati Police Department (by and through Todd Ploehs)) and the

Hamilton County Sheriff's Department have knowingly and willingly participated in the

scheme of *the enterprise* to defraud the Plaintiff by agreeing to conceal the fact that the

Hamilton County Court of Common Pleas and the HCPO have and continue to benefit

from the unlawfully issued, sham legal process.

36

(53)     From at least June 29, 2017 until the present day, the City of Cincinnati (by and

through the Cincinnati Police Department (by and through Todd Ploehs)), the Hamilton

County Sheriff's Department, the Hamilton County Court of Common Pleas, & the

Office of the Cincinnati Prosecutor) have knowingly and willingly participated and

benefited from participating in the corrupt scheme of the enterprise to defraud and

intimidate the Plaintiff by agreeing to use the offices of the Cincinnati Prosecutor, and the

Office of the Hamilton County Common Pleas Magistrate to tamper with evidence and to

intimidate the Plaintiff from discharging his duty as a witness and victim of a crime, in

violation of O.R.C. 2921.41(A)(1), O.R.C. 2921.12(A) and O.R.C. 2921.03(A) (and 42

U.S. Code § 1985(2) and 42 U.S. Code § 1985(3)).

(54)     Todd Ploehs (representing the City of Cincinnati and the Cincinnati Police

Department) did knowingly conspire to violate Section 2905.01(B)(2) of Ohio's Revised

Code when he, by deception, (on January 8, 2018) willingly participated in the corrupt

activity of *the enterprise* agreeing that one of them would commit a corrupt activity,

going on to facilitate the enterprise in restraining the Plaintiff of his liberty through the

use of the (unlawfully issued) legal process from June 29, 2017, contrary to, and in

violation of Ohio's corrupt activity laws (including but not limited to O.R.C. 2921.03(A)

(and 42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3))).

(55)     Starting on June 15, 2017, in a scheme devised by Ploehs to defraud the Plaintiff,

the City of Cincinnati has violated Ohio's anti-intimidation law by using a materially

false and/or fraudulent writing with malicious purpose to "influence, intimidate, or hinder

a public servant, party official, or witness in the discharge of the person's duty." Using

37

the "materially false or fraudulent writing" as grounds to further the scheme to defraud, the Hamilton County Court of Common Pleas issued (unlawfully) a temporary order of protection that has been used to commit further crimes by *the enterprise*, including but not limited to theft in office, intimidation and telecommunications fraud.

(56)    From at least November 11, 2017 until October 4, 2018, Jonathan Rengering actively participated (acting on behalf of the City of Cincinnati and as the Office of the Cincinnati Prosecutor) in and agreed to use the office of the Cincinnati Prosecutor to participate in a conspiracy to commit a theft in office and engage in conduct constituting corrupt activity, in violation of O.R.C. 2921.41(A)(1) and O.R.C. 2923.32(A)(1).

(57)    Between August 13, 2018 and October 4, 2018, the City of Cincinnati (by and through the Office of the Cincinnati Prosecutor (by and through Jonathan Rengering, Esq.) did conspire with the Hamilton County Court of Common Pleas (by and through the Hamilton County Municipal Court) to further the object of *the enterprises* conspiracy by taking overt action to obstruct justice when Judge Tyrone K. Yates (being fully aware of the allegations of the concealment of the Hamilton County Sheriff's writ by the HCPO and by Rengering) consented to use his office as Municipal Court Judge to facilitate the commission of the offenses of tampering with evidence and intimidation;

> ***The Court:*** On reviewing and consideration upon hearing, I will deny all pretrial motions including -- *[Plaintiff]:* May I object to that? ***The Court:*** Yes. *[Plaintiff]:* I would like to object to -- ***The Court:*** Hold on -- including, but not limited to Motions to Dismiss and Motions in Limine, and Motion to Suppress. *[Plaintiff]:* So I can't object to those? ***The Court:*** You can and it's in the Record...Because they do not meet the test for approval under the facts and the law. *City of Cincinnati v. Kanu*, Hamilton Cty. Muni. Ct., Case nos. C-17-CRB-17911 & 17-CRB-16366, Transcript of Proceedings (8-21-2018)).
> ***

38

*The Court*: All right. Hold on. The motion to compel discovery is denied as the State has delivered -- *[Plaintiff]*: I never got a bill of particulars for example. *The Court*: -- hold on...let me finish and then you can go on. Has delivered all discovery to defendant and at previous trial setting. All right. Mr. Rengering, what about the motion of bill of particulars and all of that?...*[Plaintiff]*: I believe there is information that she has been sent that is relevant to impeaching witnesses at trial, which are provable. For example, knowledge of concealed information, and I would like to know exactly what information has already -- what else has been concealed. For example, in case C17/CRB/17911 Mr. Rengering is obviously a part of that, he was aware that I had not been served the TPO until 7-7 and yet for some reason, Mr. Prem continued to argue that they were not aware of that service date. So I just believe that there has been intentionally concealed information that is relevant to my defense that I need to prepare for my -- I guess I need it in order to better prepare for my defense. *The Court*: All right. I think I said at the last hearing that when the State came in, they said that they had made a mistake, that the information that they had before they spoke to the deputies at least facially, was that the order of protection had been properly given; is that correct, Mr. Rengering? *Mr. Rengering*: Yes, and that is my understanding of it, Your Honor, that the first deputy's filing appeared to say that there was service on approximately two days before the charges were filed, but, in fact, that was an error and a subsequent filing by the deputy corrected the initial filing. I was not aware of that personally, but I also note I wasn't the prosecutor assigned to that. It was a county matter. I am a city prosecutor, so I was only tangentially interested in that, but -- *The Court*: I think we all agree, I think I said at the time that it was an error. *City of Cincinnati v. Kanu*, Hamilton Cty. Muni. Ct., Case no. 17-CRB-16366, Transcript of Proceedings (10-2-2018)).
***
*Q.* Okay. That's interesting. Very interesting. So then when was it that you brought up the temporary protection order? How did that get into the fold? *A.* Soon after if not -- I don't know the specific date that the CPO was signed, but it was very soon after the criminal charge itself was signed. *Q.* And so according to my records -- *Mr. Rengering*: Object to any further line of questioning regarding a protection order that was filed subsequent to these charges...Even if they were contemporaneous, Your Honor, I am going to object to any information related to a protection order filed contemporaneous or subsequent to the filing of these charges...*The Court*: I will sustain the objection...No questions relative to the CPO. *[Plaintiff]* Are you serious? Sir, that's very important to -- that is extremely important. *The Court*: I sustained the City's objection. *City of Cincinnati v. Kanu*, Hamilton Cty. Muni. Ct., Case no. 17-CRB-16366, Transcript of Proceedings (10-2-2018))
***

> *Mr. Rengering*: Speaking on behalf of the county, who actually handled
> the protection order case, it had appeared to the prosecutor involved and
> my own personal view of the filings, that the protection order had been
> correctly filed, but it was only until the sheriff department deputy who had
> purported to serve the protection order conferred with the county
> prosecutor handling the case that the realization came forward that it
> actually had not been served prior to the defendant's charges being filed in
> what I believe is early July...So, at one point and throughout the process, I
> know the county prosecutor had suggested to the Court that they had
> evidence to represent the filing of the protection order and service prior to
> the charges being filed, but only after it was discovered that information
> was incorrect, that the charge was dismissed at the request of the
> prosecuting attorney...*City of Cincinnati v. Kanu*, Hamilton Cty. Muni.
> Ct., Case no. 17-CRB-16366, Transcript of Proceedings (10-4-2018).

In truth and in fact, the Plaintiff had been trying to inform the Court of the fact that the

City of Cincinnati (by and through the Office of the Cincinnati Prosecutor (by and

through Rengering)) was actively conspiring to defraud the Plaintiff; the object of the

conspiracy being to cover up the theft in office of the Hamilton County Court of

Common Pleas (by and through (former) Hamilton County Court of Common Pleas

Magistrate Bachman) in concert and in furtherance of the object of *the enterprises*

conspiracy;

> Defendant feels these authorities are important for driving home the point
> that **information known to the police** -- through Todd Ploehs, a witness
> Rengering intends to call at trial -- has been concealed. Specifically,
> Defendant can bring to the attention of the court three distinct "corrupt
> activities" that -- taken together -- meet the "pattern of two or more
> corrupt activities" in order to be found in violation of O.R.C. 2923.31. The
> **first corrupt activity** is in relation to the ongoing prosecution in case
> 17-crb-17911; prosecutors for the State of Ohio have continued to seek a
> conviction of the Defendant, despite the Brady duty to Disclose evidence
> favorable to the accused -- **evidence being that Defendant was served
> July 7, 2017** -- as well as their duty to know that ". The **second corrupt
> activity** that Defendant asserts violates ORC 2923.31 is Magistrate
> Michael Bachman's false statement in his **Magistrates Finding of Fact
> and Conclusions of Law (case no. SK1700816) -- filed April 19, 2018 --**
> that:

40

> ...Therefore, the court issued an ex-parte civil protection
> order and the order was served **on the Respondent on
> June 29, 2017.**

Defendant asserts that this material statement is false, and can produce
evidence to support it being false through the Hamilton County Sheriff's
Department. The **third corrupt activity that is known to be false,** is
Deputy Hernyak filing a "County Writ". Deputy Hernyak's filing has a
**"Date Served"** of "**6/29/2017**", with the **"Type of Service"** as
"Personal". Defendant can prove this is a false statement, filed in order to
"conceal", "obstruct" and/or "confuse". It is also to "assist" in the
concealment of the truth. Defendant asserts that he was served with the
Order of protection on July 7, 2017 by Deputy Hollinsworth of the
Hamilton County Sheriff's department, a verifiable fact -- **of which
Defendant has the documentation to prove.** Citing *City of Cincinnati v.
Kanu*, Hamilton Cty. Muni. Ct., Case no. 17-CRB-17911, *Amended
Motion to Dismiss* (8-8-2018))

(58)    Instead of taking action to stop the conspiracy, the Hamilton County Court of

Common Pleas (by and through the Hamilton County Municipal Court) has been

attempting to collect on an unlawful debt since October 4, 2018, in violation of *O.R.C.*

*2923.32(A)(1)*, *O.R.C. 2923.32(A)(3)*, 42 U.S. Code § 1985 & 42 U.S. Code § 1986 when

Hamilton County Court of Common Pleas (by and through the Hamilton County

Municipal Court (by and through Tyrone K. Yates acting as and on behalf of the Court))

ordered the Plaintiff to pay a fine that was both directly and indirectly a proceed of *the*

*enterprises* conspiracy; "***The Court***: We can credit 35. There will be a fine of $750, plus

costs...And what is your bond currently? [***Plaintiff***]: 10,000 in this case. If you -- ***The***

***Court***: Have you paid the bond?...***The Court***: Bond will remain the same with EMD...***Mr.***

***Rengering***: Your Honor, I didn't hear the full sentence. I understand it's being stayed, but

I didn't hear the full order of the Court in term of the sentencing. ***The Court***: Thank you

so much, I will repeat it. It was a 180 days in jail, 35 days credit, fine of $750 dollars plus

costs, okay?" Citing *City of Cincinnati v. Kanu*, Hamilton Cty. Muni. Ct., Case no.

17-CRB-16366, *Transcript of Proceedings* (10-4-2018));

> Every person who, having knowledge that any of the wrongs conspired to
> be done, and mentioned in section 1985 of this title, are about to be
> committed, and having power to prevent or aid in preventing the
> commission of the same, neglects or refuses so to do, if such wrongful act
> be committed, shall be liable to the party injured, or his legal
> representatives, for all damages caused by such wrongful act, which such
> person by reasonable diligence could have prevented; and such damages
> may be recovered in an action on the case.

(59)    The Plaintiff suffered unlawful arrest, unlawful detainment, unlawful threat of

harm, economic loss, competitive injury, injury as a result of the corrupt activities, loss of

reputation, emotional harm and mental distress as the natural cause and result of the City

of Cincinnati (by and through the Office of the Cincinnati Prosecutor (by and through

Rengering and Kessler)), the Hamilton County Court of Common Pleas (by and through

Bachman), and the Cincinnati Police Department (by and through Todd Ploehs)

conspiring (on behalf of and to the benefit of *the enterprise* -- whose beneficiaries and

co-conspirators include but are not limited to the Loveland Police Department, the

Hamilton County Sheriff's Department, and the Hamilton County Public Defender's

Office (by and through Niehaus & Wiseman) --) to engage in the corrupt activities of

tampering with evidence, using sham legal process, telecommunications fraud,

intimidation, & theft in office. "Accordingly, for a plaintiff to claim negligence per se, he

or she must present evidence that: (1) there is a legislative enactment that imposes a

specific duty upon the defendant for the safety and protection of a person in plaintiff's

position; (2) the defendant failed to observe the enactment; and (3) that failure

proximately caused his or her injury." See *Gressman v. McClain*, (1988), 40 Ohio St.3d

42

359, 362. "If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone. *Neff Lumber Co. v. First National Bank of St. Clairsville, Admr.*, 122 Ohio St. 302, 309, 171 N.E. 327. *Mudrich v. Standard Oil Co.*, (1950), 153 Ohio St. 31, 39, 41 O.O. 117, 121, 90 N.E.2d 859, 863." See *Mussivand v. David*, 45 Ohio St. 3d 314, 318 (Ohio 1989). Plaintiff can and will provide evidence that the corrupt activities have resulted in the Plaintiff having a bond for total of 603 days (and counting) broken down as follows: 30 days at $50,000, and 178 days at $10,000, totaling $3,280,000 in actual damages (case no C-17-CRB-17911); 30 days at $50,000, and 335 days (and counting, while this case is in Ohio's 1st District Appellate Court) at $10,000, totaling $4,850,000 in actual damages (case no 17-CRB-16366); and 409 days (and counting) at $20,000, totaling $8,180,000 in actual damages and counting (case no B1800225) *for a total of: $16,310,000 in actual damages and counting while case no. B1800225 is pending in the Hamilton County Court of Common Pleas and case no. C1800585 (trial case no. 17-CRB-16366) is pending in Ohio's 1st District Appellate Court.*

(60)    Plaintiff seeks damages under the theory of common law negligence, specific-statutory-enactment-negligence, damages from civil action for damages from a criminal act under Ohio Revised Code Section 2307.60 (A), and damages from civil action under Ohio Revised Code Sections 2921.03(C), 2923.34(A), 2923.34 (E), and 2921.51 (E), 18 U.S. Code § 241. Conspiracy against rights, 18 U.S. Code § 242.

Deprivation of rights under color of law,  42 U.S. Code § 1985. Conspiracy to interfere

with civil rights, & 42 U.S. Code § 1986. Action for neglect to prevent.

### III. Other Related Lawsuits

(61) *Kanu vs Supreme Court of Ohio, et al.*, 2018-01519JD

(62) *Kanu vs Supreme Court of Ohio, et al.*, 2018-01513JD

### IV. Relief

(63) **Based on the claims and facts in *Sections II, A-E*, Plaintiff seeks a *(1)* a**

**trial by jury; *a (2)* judgment** against *the enterprise **in the sum of***

***$34,380,000.00*** dollars in compensatory/actual damages (and counting each day

at ($20,000x3) for case no. B1800225) and ***$333,333,333.33*** dollars in punitive

damages ***from the Defendants in D***; & judgement against *the enterprise **in the***

***sum of $48,930,000.00*** dollars in compensatory/actual damages (and counting

each day at ($10,000x3) for case no. C-18-585 and ($20,000x3) for case no.

B1800225) and ***$333,333,333.33*** dollars in punitive damages ***from the***

***Defendants in E***. Plaintiff also demands reimbursement of the plaintiff's costs for

any court costs and fees resulting from the filing of this formal complaint in the

Southern District of Ohio; ***& (3) as well as federal and state criminal***

***investigations into each individual involved in the corrupt activities*** (by the *U.S.*

*Department of Justice*, and/or the *FBI*, and/or the *Ohio Attorney General*) of *the*

*enterprise* based on the allegations brought to light in this sworn complaint.

s/ Bryan Kanu
2663 Wendee Dr. Apt. 1919
Cincinnati, Ohio 45238
bryan.kanu18@gmail.com

44

## VI. CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document is to be served upon the attorneys associated with the case by the U.S. Marshall Service, request for service made pursuant to Loc. R. 4.3 February 27, 2019.