UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRYAN KANU,
     Plaintiff,

vs.

CITY OF CINCINNATI, et al.,
     Defendants.

Case No. 1:19-cv-156
Dlott, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

## I.    INTRODUCTION

Pro se plaintiff Bryan Kanu brings this action alleging violations of his civil rights and Ohio law against the City of Cincinnati (Cincinnati), Sgt. Todd Ploehs, City prosecutor Jonathan Rengering (collectively, the City defendants); Hamilton County, Ohio (Hamilton County); County prosecutors Joseph Deters, Elizabeth Volmer Polston, Zachary Garrison, and Joseph Prem; Sheriff's Deputy Nicholas Hrnyak (collectively, the County defendants); and Michael Bachman, a former magistrate on the Hamilton County Court of Common Pleas.

On October 29, 2019, this Court issued an Order and Report and Recommendation that, among other things, recommended the Court abstain from exercising its jurisdiction over all claims against the City defendants[1] related to Case No. B1800225 in the Hamilton County Court of Common Pleas (the Felony case) and Case No. 17-CRB-16366 in the Hamilton County Municipal Court (the City misdemeanor case) and that plaintiff's claims related to these cases be stayed pending the conclusion of the state court criminal proceedings.  (Doc. 52 at PAGEID 1077).  The Court also recommended abstaining from exercising jurisdiction over all claims

---

[1] The complaint considered at the time of that Order and Report and Recommendation asserted claims against the City of Cincinnati; the Cincinnati Police Department, District 4; the Office of the City of Cincinnati Prosecutor; the Hamilton County Court of Common Pleas; and the Office of the Hamilton County Prosecutor.  (Doc. 4).  The reference to "City defendants" therein referred to the first three defendants and the reference therein to "County defendants" referred to the latter two defendants.

against the County defendants related to the Felony case and that plaintiff's claims related

thereto be stayed pending the conclusion of state court criminal proceedings.  (*Id.* at PAGEID

1077-78).  The District Judge adopted the undersigned's recommendations.  (Doc. 72).

The City defendants thereafter moved to dissolve the stay (Doc. 74) upon plaintiff's

conviction becoming final in the City misdemeanor case and the dismissal of the Felony case,

and plaintiff moved to amend his complaint (Doc. 75).  The Court granted both motions.[2]  (Doc.

78).

This matter is before the Court on the City defendants' motion to dismiss (Doc. 97),

defendant Bachman's motion for judgment on the pleadings (Doc. 99), and the County

defendants' motion to dismiss (Doc. 102).  Plaintiff has filed responses to these motions (Docs.

105, 106) and defendants have replied (Docs. 108-10).  For the reasons that follow, the Court

recommends that defendants' motions be granted.

## II.     THE AMENDED COMPLAINT (DOC. 84)

The allegations in plaintiff's amended complaint flow from four state court proceedings

against plaintiff:

1. June 15, 2017: defendant Ploehs initiated misdemeanor criminal charges in the City
   misdemeanor case for telecommunications harassment of S.M.  (Doc. 84 at PAGEID
   1432).  Plaintiff was convicted and the Supreme Court of Ohio dismissed his appeal.
   (*See* Doc. 74-1) (entry of dismissal).

---

[2] The Court conditionally granted plaintiff's motion, provided that his amended complaint met several criteria.
Those criteria included that the amended complaint (1) comply with Rule 8(a) of the Federal Rules of Civil
Procedure, (2) comply with S.D. Ohio Civ. R. 5.1, and (3) be double-spaced.  (Doc. 78 at PAGEID 1404-05).
Defendant Bachman raises deficiencies on these technical grounds as a basis to dismiss the amended complaint.
(*See* Doc. 99 at PAGEID 1534-35).  Notwithstanding these persistent errors, the Court elects to consider plaintiff's
claims on their merits, which have been fully briefed.  *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)
("[T]his court prefers that claims be adjudicated on their merits" absent "a clear pattern of delay.") (citation
omitted).

2. June 29, 2017: defendant Bachman issued an *ex parte* emergency protection order (EPO) on the petition of S.M. for a civil stalking protection order. (*Id.*). A final protection order issued November 20, 2019. (Doc. 108-1).[3]

3. July 1, 2017: the Loveland, Ohio police department filed misdemeanor criminal charges in case number C/17/CRB/17911 for violating the EPO (the Loveland misdemeanor case). (Doc. 84 at 1433). This case has since been dismissed. (*See id.* at PAGEID 1434).

4. January 2018: defendant Ploehs initiated a felony criminal charge in the Felony case for menacing by stalking. (*Id.* at PAGEID 1434). This case has since been dismissed. (*See id.*). (*See also* Doc. 74-2) (dismissal of the indictment).

Summarized briefly, plaintiff alleges that defendant Bachman unlawfully issued the EPO and that the resulting Loveland misdemeanor and Felony cases stemming from plaintiff's alleged violations of that EPO were therefore illegal. Plaintiff also alleges a broad conspiracy, beginning among defendants Bachman, Ploehs, Hamilton County, and Hrnyak, and later spreading to the remaining defendants, to unlawfully convict plaintiff and withhold exculpatory evidence in these proceedings. In particular, he alleges that defendants conspired to cover up the fact that the EPO had not been properly served on plaintiff prior to the initiation of the Loveland misdemeanor case.

Against this background, plaintiff asserts the following claims against the following defendants, as best the Court can decipher:

- violations of civil rights and related conspiracy claims[4] against all defendants; municipality liability against Cincinnati and Hamilton County (Counts I, II, III)

- intentional infliction of emotional distress against all defendants (Count IV)

- Fourth Amendment violations related to false imprisonment and continued unlawful detention against all defendants (Count V)

---

[3] Plaintiff's response (Doc. 105) attaches an alleged objection to this order. (Doc. 105-1). The alleged filing is not dated or file-stamped and there is no plausible reason otherwise to doubt the finality of this protection order.
[4] Counts I-III of plaintiff's amended complaint identify only a "deprivation of rights conspiracy" (Doc. 84 at PAGEID 1443), which appears to invoke 42 U.S.C. § 1985(3). Throughout the amended complaint, however, plaintiff also appears to invoke the obstruction of justice conspiracy claim contemplated by 42 U.S.C. § 1985(2). (*See* Doc. 84 at PAGEID 1436-42).

- violations of the Ohio Corrupt Activities Act (OCAA), Ohio Rev. Code §§ 2923.31-2923.36,[5] Ohio's corollary to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, against all defendants (Counts VI and VII)

- negligence in preventing conspiracy under 42 U.S.C. § 1986 against defendant Deters (Count VIII)

- abuse of process against all defendants (Count IX)

- negligence against all defendants (Counts X, XI)

- fraud and conspiracy to commit fraud against all defendants except Cincinnati (Counts XII and XIII)

- violations of Ohio's Constitution, Art. I, §§ 10(A)(4) and 14, against all defendants (Count XIV).

(*Id.* at PAGEID 1443-50).  Plaintiff seeks equitable and monetary relief.  (*Id.* at PAGEID 1450).

## III.    RULE 12(b)(6) AND RULE 12(c) STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party.  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).  Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required.  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 555, 570).  A

---

[5] The amended complaint cites Ohio Rev. Code § 2923.32(A)(1) in particular, which reads: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."

plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)).

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Sixth Circuit has also recognized, however, that this liberal construction does not come at the expense of "abrogat[ing] basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted).

## IV. DEFENDANTS' PENDING MOTIONS

### A. The County defendants' motion to dismiss (Doc. 102)

The County defendants argue that County prosecutors are absolutely immune from prosecution for plaintiff's claims arising under 42 U.S.C. §§ 1983, 1985, and 1986 because plaintiff's allegations concern actions taken in connection with the judicial phase of plaintiff's prosecutions. They argue that the County prosecutors are also entitled to qualified immunity because plaintiff has not alleged factually supported constitutional violations. They also argue that defendant Hrnyak (a Sheriff's Deputy) cannot be liable for any constitutional violations related to the improper service date of the EPO because plaintiff has not alleged blameworthy conduct by him. Finally, they argue that any constitutional claim related to an alleged failure by

defendant Hrnyak to disclose exculpatory evidence is foreclosed by the fact that neither the Loveland misdemeanor nor the Felony case ever proceeded to trial.

As a separate basis for dismissing plaintiff's conspiracy-based claims (Counts VIII[6] and XIII), the County defendants argue that plaintiff has not demonstrated class-based invidiously discriminatory animus, which is a necessary element of 42 U.S.C. § 1985(3). As a more general matter, they argue that plaintiff's allegations regarding an agreement or meeting of the minds among defendants are not sufficiently specific to state a conspiracy claim. They further argue that the lack of an underlying 42 U.S.C. § 1985 claim is fatal to a 42 U.S.C. § 1986 claim.

The individual County defendants argue that they are entitled to immunity under state law pursuant to Ohio's Political Subdivision Tort Liability Act (PSTLA), Ohio Rev. Code § 2744 *et seq.*, for the claims alleged in Counts IV, VI-VII, X-XIV. In particular, they argue that the County prosecutors are shielded from liability under Ohio Rev. Code § 2744.03(A)(7) and that defendant Hrnyak is shielded from liability under Ohio Rev. Code § 2744.03(A)(6).

As a separate basis for dismissing the fraud claims in Counts XII and XIII, the County defendants argue that plaintiff has neither identified the particular representation made with the requisite specificity nor identified resulting injury—both elements of a fraud claim under Ohio law. As a separate basis for dismissing the abuse of process claim in Count IX, the County defendants argue that plaintiff has failed to allege a fundamental element of this claim: an ulterior motive driving their prosecutions of plaintiff. As a separate basis for dismissing the OCAA claims in Counts VI and VII, the County defendants cite several subsections of the U.S. Code relating to the obstruction of justice (*see* 18 U.C. §§ 1512(b), (d))[7] and argue that plaintiff

---

[6] Although the County defendants cite this Count, the Court reads Count VIII to be a negligence in *preventing* a conspiracy claim and Count II to present the civil rights conspiracy claim.

[7] While plaintiff does not cite this statute, the Court believes the County defendants to refer to this statute based on certain allegations of the amended complaint concerning the obstruction of justice. *See supra* n.3.

has failed to allege a "pattern" of racketeering activity, how that pattern is related to a criminal enterprise, and the existence of a threat of continuing racketeering activity.

Finally, the County defendants argue that Hamilton County is not *sui juris* and that the amended complaint should therefore be dismissed as to Hamilton County as a matter of law.

B. The City defendants' motion to dismiss (Doc. 97)

The City defendants argue that City prosecutor Rengering is absolutely immune from liability as to all claims[8] because plaintiff's allegations concern his actions taken in connection with the judicial phase of the criminal process. They argue that defendant Ploehs (a police sergeant) is entitled to qualified immunity on plaintiff's civil rights claims (Counts I, II, III, V, and VIII) because plaintiff has not identified any constitutional violations or blameworthy conduct by him.

The City defendants argue that plaintiff's civil rights conspiracy claim (Counts II) fails for lack of a class-based invidiously discriminatory animus, which is necessary under 42 U.S.C. § 1985(3). As a consequence, they argue that the related failure to prevent such a conspiracy claim also fails (Count VIII). They argue that plaintiff's municipality liability claim (Count III) must be dismissed because he has shown neither that Cincinnati acted with deliberate indifference to plaintiff's constitutional rights nor that an official policy of, or a failure to adequately supervise or train employees by, Cincinnati resulted in a violation of plaintiff's constitutional rights.

The City defendants argue that the PSTLA shields Cincinnati from liability for plaintiff's tort claims because plaintiff's allegations concern the performance of governmental functions and no exceptions to that immunity apply. They argue that the individual City defendants are

---

[8] In their reply, the City defendants acknowledge defendant Rengering's legal advice to defendant Ploehs is not protected by absolute immunity. *See infra* p. 12-13.

immune under Ohio Rev. Code § 2744.03(A)(6) and that plaintiff does not adequately allege the only potentially relevant exception to that immunity, Ohio Rev. Code § 2744.03(A)(6)(b) (where actions were taken "with malicious purpose, in bad faith, or in a wanton or reckless manner").

As a separate basis to dismiss the fraud claims (Counts XII and XIII), the City defendants argue that plaintiff has failed to identify any particular representation undergirding the fraud claims and cannot demonstrate injury. As a separate basis to dismiss the abuse of process claim, the City defendants argue that plaintiff has failed to allege an ulterior motive driving their prosecution of plaintiff.

As a separate basis to dismiss the OCAA claims, the City defendants analogize to the federal RICO statute and argue that OCAA claims must be pled with a particularity missing from the amended complaint. As to Cincinnati in particular, they argue that municipalities are incapable of forming the requisite intent to support liability under the OCAA. As to defendant Ploehs, they argue that plaintiff has not alleged conduct by him that violates the criminal statutes cited and that, in any event, the alleged conduct is not tied to an ongoing criminal enterprise. As to defendant Rengering, they argue that he is shielded from liability by the doctrine of absolute immunity and that, regardless, his alleged conduct does not violate the criminal statutes cited.

C. Defendant Bachman's motion for judgment on the pleadings (Doc. 99)[9]

---

[9] In his opposition, plaintiff argues that defendant Bachman's motion is premature under Rule 12(c) of the Federal Rules of Civil Procedure. Defendants have not answered plaintiff's most recently amended complaint, though an answer was filed in the case (Doc. 23) prior to the myriad of attempts by plaintiff to amend and/or supplement his complaint. (*See* Docs. 9, 16, 19, 28-30, 36-39, 41-42, 51, 75). Given the protracted pleading stage in this case and lack of evident prejudice to plaintiff, the Court recommends construing defendant Bachman's Rule 12(c) motion as a Rule 12(b)(6) motion. *See Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 840-41 (N.D. Ohio 2009) (and cases cited therein) (construing a premature Rule 12(c) motion as a motion to dismiss under Rule 12(b)(6)). *See also Newton v. Miller*, No. 3:07-cv-449, 2009 WL 3241723, at *3 (E.D. Tenn. Sept. 30, 2009) (noting that the plaintiff suffers no prejudice if a Rule 12(c) motion is construed as a Rule 12(b)(6) because the motions are evaluated under the same standard of review). The out-of-circuit authorities cited by plaintiff to support his position otherwise, which do not discuss or exercise such discretion, are not persuasive. (*See* Doc. 106 at PAGEID 1594-95).

Defendant Bachman argues that he is entitled to absolute judicial immunity because all of plaintiff's claims against him concern (1) actions taken in his judicial capacity and (2) matters over which he had jurisdiction.  He also argues that he is entitled to qualified immunity because plaintiff has failed to adequately allege the constitutional rights violated.  He also argues that he enjoys immunity under the PSTLA under both Ohio Rev. Code §§ 2744.03(A)(6) and (7) and that no exception applies.

As a separate basis to dismiss plaintiff's constitutional and OCAA conspiracy claims, defendant Bachman argues that plaintiff has not demonstrated class-based invidiously discriminatory animus, which is necessary under 42 U.S.C. § 1985(3), and has not made more than conclusory allegations to support an "enterprise" or "meeting of the minds" for purposes of either a civil rights or OCAA conspiracy.

## V.   ANALYSIS

### A.  Absolute immunity

The County prosecutors and defendant Rengering argue that they are entitled to absolute prosecutorial immunity.  "Prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'"  *Manetta v. Macomb Cnty. Enforcement Team*, 141 F.3d 270, 274 (6th Cir. 1998) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  This includes a county prosecutor's initiation of a prosecution and presentation of the State's case at trial.  *Imbler*, 424 U.S. at 431.  *See also Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997) (deciding to file a criminal complaint and seeking issuance of an arrest warrant are protected by absolute immunity).  A prosecutor's initiation and presentation of a case to a grand jury falls within the traditional functions of the prosecutor and is shielded by absolute immunity.  *Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989).  Courts have

9

consistently recognized that even the knowing presentation of false testimony to a grand jury or a trial jury are actions protected by absolute immunity. *See Spurlock v. Thompson*, 330 F.3d 791, 797-98 (6th Cir. 2004) (citing *Imbler*, 424 U.S. at 413, 430 and *Buckley v. Fitzsimmons*, 509 U.S. 259, 267 n.3 (1993)). Such "absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously." *Lomaz v. Hennosy*, 151 F.3d 493, 498 n.7 (6th Cir. 1998) (citing *Grant*, 870 F.2d at 1138).

      1.   *The County defendant prosecutors*

Plaintiff argues that the County prosecutors are not absolutely immune from his 42 U.S.C. §§ 1983, 1985, and 1986 claims because there was "no probable cause to suspect plaintiff of a crime." (Doc. 105 at PAGEID 1567). In particular, he argues that the County prosecutors manufactured or fabricated evidence to generate probable cause. (*See id.* at PAGEID 1568). He also argues that their actions were taken not in the judicial phase of the criminal process but instead while gathering evidence to initiate the Felony case (*see id.*) (referring to Doc. 84 at PAGEID 1441, ¶ 53) and after the prosecution had concluded (*see id.*) (referring to Doc. 84 at PAGEID 1440, ¶ 47).

First, while plaintiff invokes the concept of investigatory functions in his response and complaint (*see, e.g.,* Doc. 105 at PAGEID 1568), his allegations do not describe actions by the County prosecutors that are unrelated to the initiation of prosecution or judicial proceedings. *See Imbler*, 424 U.S. at 431. The Supreme Court has acknowledged that:

> acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley*, 509 U.S. at 273. *See also Ireland*, 113 F.3d at 1447 ("Absolute prosecutorial immunity will likewise attach to administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution.") (footnote omitted). Plaintiff specifically points to his allegation that defendant Polston "participate[d] in and further[ed]" defendants Rengering and Ploehs investigation related to the Felony case and "started gathering the evidence they had collected." (Doc. 84 at PAGEID 1441, ¶ 53). He further alleges that "[t]he evidence [defendant Polston] gathered was unknown to the Grand Jury at the time they decided to indict [plaintiff]" and that defendant Polston "unsuccessfully attempted to use her newly gathered evidence to amend the indictment. . . ." (*Id.*). This allegation suggests that her "investigation" took place after the decision to seek an indictment was made and is therefore protected by absolute immunity. *Buckley*, 509 U.S. at 273.

Second, plaintiff cites *Milstein v. Cooley*, 257 F.3d 1004 (9th Cir. 2001), for the proposition that the fabrication of evidence destroys absolute immunity. As an initial matter, plaintiff does not actually allege that the County prosecutors manufactured or fabricated evidence. The allegations related to the unlawful EPO and service thereof, which the Court understands to constitute the fabrication or manufacture of evidence under plaintiff's theory of the case, are tied to defendants Bachman and Hrnyak. (*See* Doc. 84 at PAGEID 1437, ¶¶ 33, 35). Moreover, *Milstein* held that immunity is destroyed only when such fabrication of evidence occurs before a prosecution begins, e.g., prior to the determination of probable cause. 257 F.3d at 1011. Plaintiff makes no plausible allegation that the County prosecutors were involved in plaintiffs' prosecutions at such a preliminary stage.

Finally, plaintiff cites the following allegation as occurring *after* his prosecutions:

Between September 20, 2018, and October 4, 2018, both dates being approximate and inclusive, defendant PREM deceptively prevented the plaintiff from obtaining

> the dismissal of [the City misdemeanor case] on the grounds of defendant
> RENGERING's prosecutorial misconduct.  Because defendant PREM
> communicated false information to [plaintiff] on September 20, 2018, with regard
> to how long he had known about the exculpatory Writs, [plaintiff] is still not able
> to definitively report to federal law enforcement that defendant RENGERING lied
> in open court to defraud [plaintiff] on October 4, 2018 ([the City misdemeanor
> case]).

(Doc. 84 at PAGEID 1440, ¶ 47) (footnote omitted).  First, the Court is not entirely sure of which discrete action by defendant Prem plaintiff believes is unlawful by this vague description. In addition, plaintiff elsewhere admits that the Felony case was not dismissed until January of 2020 (*see id.* at PAGEID 1434).  Accordingly, plaintiff does not allege that the County defendant prosecutors' actions took place after their prosecutorial duties had ended.

For the foregoing reasons, the County defendant prosecutors are entitled to prosecutorial immunity on plaintiff's 42 U.S.C. §§ 1983, 1985, and 1986 claims.

### 2. *Defendant Rengering*

Plaintiff appears to concede that the only allegation regarding defendant Rengering that might fall outside of his absolute immunity bar (i.e., outside the scope of the judicial phase of the criminal process) is his legal advice to defendant Ploehs that there was probable cause that plaintiff had violated the EPO.  (*See* Doc. 105 at PAGEID 1565).  *See Burns v. Reed*, 500 U.S. 478, 496 (1991) (absolute immunity does not extend to a prosecutor offering legal advice to the police).  In his amended complaint, plaintiff alleges that defendant Rengering advised defendant Ploehs "that there was probable cause to suspect that [plaintiff] had engaged in conduct constituting a violation of [Ohio Rev. Code §] 2903.211" and that, based on this advice, defendant Ploehs initiated the Felony case.  (Doc. 84 at PAGEID 1440, ¶ 49).  Plaintiff argues that "defendant Rengering has failed to show how opening a new investigation was necessary preparation for the judicial proceedings in [the City misdemeanor case]."  (Doc. 105 at PAGEID

12

1566). Defendant Rengering concedes that this allegation falls beyond the scope of absolute immunity. (*See* Doc. 108 at PAGEID 1622). To the extent that the remaining specific and nonconclusory allegation regarding defendant Rengering concerns his prosecutorial functions during the judicial phases of the City misdemeanor and Felony cases, however, he is absolutely immune from liability related to these actions. (*See* Doc. 84 at PAGEID 1439, ¶ 45) (referencing defendant's advocacy on Hamilton County's behalf in a Court proceeding in the Loveland misdemeanor case).

### 3. *Defendant Bachman*

Defendant Bachman argues that he is entitled to absolute judicial immunity. Judges are largely immune from liability for acts they commit while functioning within their judicial capacity. *See Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019) (citing *Mireles v. Waco*, 502 U.S. 9, 9 (1991)). A plaintiff can overcome a claim of judicial immunity only where: 1) the judge's actions were clearly non-judicial in nature and therefore outside the scope of the judge's judicial capacity; or 2) the judge's actions were taken in the absence of all jurisdiction. *Mireles*, 502 U.S. at 12 (citations omitted). The factors that are relevant to whether an act is judicial in nature are: 1) "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge"; and 2) "whether [the parties] dealt with the judge in his judicial capacity." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Judges retain immunity if they exceed their jurisdiction, such as convicting a defendant of a nonexistent crime, if they act in error, or if they act maliciously; judges loses immunity if they act without jurisdiction, such as a probate judge trying a criminal case. *Stump*, 435 U.S. at 357 n.7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)).

Plaintiff argues that *King v. Love*, 766 F.2d 962 (6th Cir. 1985) supports his position that defendant Bachman acted non-judicially when he allegedly misled the Loveland police department and Hamilton County Sheriff's department to believe that plaintiff had been served on June 29, 2017, with a lawful EPO. (*See* Doc. 106 at PAGEID 1595-96). *King* is distinguishable, however, as the judge therein had extra-judicial contact with a police officer, sought to have an individual not named in a warrant arrested well after the warrant initially issued, and did so to intimidate a witness that was to testify in his upcoming judicial conduct hearing. *King*, 766 F.2d at 964. Here, the allegations against defendant Bachman concern his issuance of the EPO (*see* Doc. 84 at PAGEID 1437, ¶ 33), his issuance of an arrest warrant in connection with the EPO (*see id.* at PAGEID 1438, ¶ 40), and his issuance of a Decision and Finding of Facts that included an incorrect date of service of the EPO (*see id.* at PAGEIID 1441, ¶ 55). Each of these actions fell within defendant Bachman's jurisdiction and were judicial in nature (i.e., they were actions normally handled by a judge and defendant Bachman dealt with parties involved in his judicial capacity). *See Mireles*, 502 U.S. at 12. As such, plaintiff has failed to persuade the Court that any of his allegations involving defendant Bachman concern non-judicial acts or acts outside the scope of his jurisdiction. Defendant Bachman is entitled to absolute judicial immunity related to these actions.

B.  Qualified immunity

The qualified-immunity doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Al-Lamadani v. Lang*, 624 F. App'x 405, 409 (6th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). The Court conducts a two-step inquiry when considering a claim for

qualified immunity. *Id.* (citing *Pearson*, 555 U.S. at 232). At the first step, the Court asks whether the facts viewed in the light most favorable to the plaintiff show that the officer has violated the plaintiff's constitutional rights. *Id.* (citing *Pearson*, 555 U.S. at 232). At the second step, the Court asks whether the right was clearly established at the time of the violation. *Id.* (citing *Pearson*, 555 U.S. at 232). "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (internal quotation marks, citation, and alterations omitted)). The Court may consider the two steps of the inquiry in the order it chooses. *Id.* (citing *Pearson*, 555 U.S. at 242). Plaintiff has the burden to show that a defendant is not entitled to qualified immunity. *Id.* (citing *O'Malley v. City of Flint*, 652 F.3d 662, 667 (6th Cir. 2011)). Even under a liberal pro se pleading standard, a cognizable civil rights claim must contain more than conclusory allegations and identify a specific constitutional right that has been allegedly violated. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) ("[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983.").

While Count V specifically alleges "false imprisonment and continued unlawful detention," the amended complaint is ambiguous as to the specific constitutional rights allegedly violated. In plaintiff's combined articulation of Counts I-III in his amended complaint, he alleges that defendants violated four constitutional amendments. (*See* Doc. 84 at PAGEID 1444) ("Each and every defendant, acting under color of law, violated clearly established rights secured to the Plaintiff by the United States Constitution under its Second, Fourth, Sixth and Fourteenth Amendments."). Construing plaintiff's pro se amended complaint liberally and as a whole,

15

however, it appears that plaintiff asserts violations of his Fourth and Fourteenth Amendment rights.  In particular, plaintiff alleges claims of false arrest, false imprisonment,[10] malicious prosecution, and a *Brady*[11] violation.

When a 42 U.S.C. § 1983 plaintiff brings a claim of false arrest, "[t]he federal constitutional right implicated . . . is the Fourth Amendment right to be arrested only upon probable cause."  *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579-80 (6th Cir. 2003) (citing *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)) (finding that a claim for wrongful arrest turns on whether officer had probable cause under the Fourth Amendment); *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (to prevail on Fourth Amendment false arrest claim, plaintiff must establish officer lacked probable cause to believe person committed or was committing an offense).  Claims of false arrest and false imprisonment under § 1983 overlap, with false arrest being a species of false imprisonment.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  False imprisonment is detention without legal process.  *Id.* at 389.  False imprisonment necessarily ends when the individual becomes held pursuant to legal process, e.g., when he is arraigned on charges.  *Id.*

To prevail on a false arrest and false imprisonment claim under the Fourth Amendment, a plaintiff must show that he was arrested without probable cause and detained without legal process.  *Wallace*, 549 U.S. at 390.  "An arrest pursuant to a facially valid warrant is generally a complete defense to a claim for false arrest or false imprisonment brought under § 1983." *Voyticky v. Vill. of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005) (citing *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979)) (footnote omitted).

---

[10] While plaintiff does not use this term, he does imply a claim related to his confinement for some period of time. (*See* Doc. 84 at PAGEID 1443, ¶ 63).
[11] *Brady v. Maryland*, 373 U.S. 83 (1963).

Where an officer intentionally provided misleading information or omitted information at a probable cause hearing for an arrest warrant and the misleading or omitted information is critical to the finding of probable cause, however, the officer may not rely on the judicial determination of probable cause. *See Voyticky*, 412 F.3d at 677 n.4 (citing *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998); *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)). An arrestee's actual innocence is irrelevant to whether there existed probable cause for an arrest warrant. *Baker*, 443 U.S. at 145; *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). "[A]n arrest grounded in probable cause does not become invalid simply because the charges are later dropped or the defendant is acquitted." *Manley v. Paramount's Kings Island,* 299 F. App'x 524, 530 (6th Cir. 2008) (citing *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004)).

The Fourth Amendment also encompasses malicious prosecution claims, for which a plaintiff must show, first:

> that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir.2007)[.] . . . Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, *Fox*, 489 F.3d at 237; *Voyticky*, 412 F.3d at 675. Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. . . . *[C]f. Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages for confinement imposed pursuant to legal process."). Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (certain citations omitted). For purposes of the first malicious prosecution element, the defendant must have done more than "passively or neutrally" participated in the decision to prosecute. *Id.* at 308 n. 5. "[I]t has been

17

long settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'"  *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)).  "[A] transgressing officer must have acted 'knowingly or recklessly' in making false statements that were material to the prosecution" for an indictment to *not* insulate a defendant from a malicious prosecution claim under the Fourth Amendment.  *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017).

As it relates to the Fourteenth Amendment, plaintiff appears to allege that defendants violated *Brady*, which established that the prosecution's suppression of exculpatory evidence violates due process where it is material to either guilt or punishment.  Where "the underlying criminal proceeding terminated in appellant's favor," however, "he has not been injured by the act of wrongful suppression of exculpatory evidence."  *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988)

### 1.  *The individual County defendants*

Plaintiff alleges that defendants Hamilton County, Garrison, Hrnyak, and Deters "undertook and performed an investigation into [plaintiff] allegedly violating the EPO ([the Loveland misdemeanor case]), or, alternatively, performed no investigation or a grossly inadequate investigation, or, alternatively, concealed exculpatory records with purpose to impair their availability for use in the Loveland PD's investigation."  (Doc. 84 at PAGEID 1438, ¶ 41).  He also alleges that defendant Garrison filed a discovery response in the Loveland misdemeanor case (*id.* a PAGEID 1439, ¶ 43) and otherwise, along with defendants Deters, Prem, and Hamilton County, "permitted the use of, or agreed to the continued use of" the incorrect date of

service of the EPO to "corrupt the outcome" of the Loveland misdemeanor case.  (*Id.* at PAGEID 1439-1440, ¶ 46).

Plaintiff alleges that defendant Polston, assigned to the Felony case, knew about the alleged corruption of the Loveland misdemeanor case and furthered this scheme by agreeing that one of several defendants would "falsely represent" the authenticity and date of the EPO.  (*Id.* at PAGEID 1441, 1449, ¶¶ 51, 96).

As it relates to the Loveland misdemeanor case, the County defendants argue that these allegations do not identify the violation of a clearly established constitutional right.  The Court agrees.  According to the amended complaint, the case was initiated and a warrant issued for plaintiff's arrest without any involvement by the County defendants (other than, potentially, defendant Hrnyak, who the Court addresses separately below).  (*See* Doc. 84 at PAGEID 1433, 1438, ¶¶ 9, 40).  At most, plaintiff vaguely alleges that, at some point between June 30 and July 28, 2017, County defendants Hamilton County, Garrison, Hrnyak, and Deters either "undertook and performed an investigation" or "performed no investigation or a grossly inadequate investigation" related to the Loveland misdemeanor case.  (*Id.* at PAGEID 1438, ¶ 41).  These allegations fail to state a plausible Fourth Amendment claim under 42 U.S.C. § 1983.  *See Lillard*, 76 F.3d at 726.  There is no plausible allegation that any of the County defendants "intentionally provided misleading information or omitted information at a probable cause hearing for an arrest warrant and [that] the misleading or omitted information [was] critical to the finding of probable cause" in the Loveland misdemeanor case.  *Voyticky*, 412 F.3d at 677 n.4 (citation omitted).

As it relates to the Felony case, the County defendants emphasize that a grand jury indicted plaintiff, a fact plaintiff admits.  (Doc. 84 at PAGEID 1441, ¶ 50).  *See Barnes*, 449 F.3d

19

at 716 (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)) (a facially valid indictment establishes probable cause).  Plaintiff's allegation in the amended complaint regarding the Felony indictment is passive (Doc. 84 at PAGEID 1441, ¶ 50) ("[t]he Grand Jury . . . was presented with a copy of the unlawfully issued EPO") and identifies no specific conduct or involvement at all by any of the County defendants.  Given the indictment and the lack of allegations that any of the County defendants specifically interfered in that proceeding, the amended complaint does not state a Fourth Amendment claim against the County defendants related to the Felony case.

As it relates to defendant Hrnyak, plaintiff alleges that he "falsely documented . . . that he had personally served the EPO on [plaintiff]."  (Doc. 84 at PAGEID 1437).  He then makes a conclusory allegation that defendant Hrnyak had a "plan" with defendants Bachman, Hamilton County, and Ploehs to defraud plaintiff by corrupting the outcome of the Loveland misdemeanor case—providing no facts or details as to why, when, or how this plan was developed.  (*See id.* at PAGEID 1437-38)).  There is no specific factual allegation that defendant Hrnyak played any active (not just a neutral or passive) role in any part of either the Loveland misdemeanor or Felony case prosecutions.  *See Sykes*, 625 F.3d at 308 n.5.  In fact, plaintiff alleges that the erroneous service date of the EPO was corrected prior to charges being filed in either case (Doc. 84 at PAGEID 1433, ¶ 8), suggesting less than active participation by Hrnyak to perpetuate his initial mistake.  The Court finds that plaintiff has failed to adequately allege defendant Hrnyak engaged in blameworthy conduct such that plaintiff states a plausible malicious prosecution or other Fourth Amendment claim against defendant Hrnyak.  *See Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) ("[A] defendant's participation must be marked by some kind of

blameworthiness, something beyond mere negligence or innocent mistake, to satisfy the elements of a malicious prosecution claim under the Fourth Amendment.").

To the extent that plaintiff alleges a *Brady* claim connected to either the Loveland misdemeanor or Felony cases against any of the County defendants, these cases were dismissed. (Doc. 84 at PAGEID 1434).  Plaintiff therefore cannot state a *Brady* claim related to the Loveland misdemeanor or Felony cases against any defendant.  *See McCune*, 842 F.2d at 907.

Plaintiff has not demonstrated that any of the individual County defendants are not entitled to qualified immunity.  The County defendants' motion to dismiss should be granted on this basis on Counts I-III, V, and VIII as to the individual County defendants.

### 2.  *The individual City defendants*

To the extent that plaintiff's constitutional claims relate to the legal advice that defendant Rengering gave defendant Ploehs (*see* Doc. 84 at PAGEID 1440, ¶ 49), only qualified immunity potentially applies.  Defendant Rengering's legal advice was tied to the existence of probable cause in the Felony case, in which plaintiff was indicted.  As discussed in relation to the County defendants, plaintiff's indictment in the Felony case established probable cause.  *See Barnes*, 449 F.3d at 716.  In other words, his advice was correct.  Plaintiff implies, however, that the advice was not correct but instead the product of defendant Rengering being "fully aware of" a "meeting of the minds" between several other defendants and other similarly vague and conclusory allegations that he "agreed to go along" with a concerted attempt to improperly prosecute plaintiff based on the unlawful EPO and service date thereof.  (*See* Doc. 84 at PAGEID 1439-41, ¶¶ 45-46, 49).  Plaintiff's amended complaint states no details or factual context to support these allegations, other than defendant Rengering's appearance on one occasion in the Loveland misdemeanor proceedings, where he allegedly spoke on the County's

21

behalf.  (*Id.* at PAGEID 1439, ¶ 45).  The amended complaint does not contain a plausible allegation that defendant Rengering's advice was blameworthy, because is there no plausible allegation that the EPO was unlawful (*see supra* n.3) or that defendant Rengering was aware of an improper service date of the EPO.  *See Moseley*, 790 F.3d at 655 ("[E]ven false testimony is not actionable as malicious prosecution unless deliberate—i.e., given with knowledge of, or reckless disregard for, its falsity.").  *See also Lillard*, 76 F.3d at 726 (a section 1983 action must be premised on specific factual allegations).  Finally, there are no allegations in the amended complaint that directly tie defendant Rengering to the indictment in the Felony case.  Defendant Rengering is entitled to qualified immunity for any Fourth Amendment claims related to his legal advice related to the Felony case.

As it relates to defendant Ploehs, plaintiff points to a voicemail that defendant Ploehs left plaintiff telling him that an EPO had issued and seems to allege that this voicemail contributed to a lack of probable cause to support plaintiff's arrest in the Loveland misdemeanor case.  (Doc. 84 at PAGEID 1437, ¶ 37).  But leaving aside the fact the contents of defendant Ploehs's voicemail to plaintiff were true (an EPO *had* issued), the only link between defendant Ploehs and the Loveland police department (who, in fact, filed charges against plaintiff) is plaintiff's allegation that defendant Ploehs, along with defendants Bachman and Hamilton County, "knowingly caused . . . the false date of service on the plaintiff to be disseminated . . . to the Loveland PD . . . to defraud [plaintiff] by corrupting the outcome of the Loveland PD's investigation. . . ."  (*See id.* at ¶ 38).  This vague and conclusory allegation does not lead to a reasonable inference that defendant Ploehs was somehow responsible for the Loveland police department's decision to press charges against plaintiff.  There is no plausible claim that defendant Ploehs violated plaintiff's Fourth Amendment rights related to the Loveland misdemeanor case.

Plaintiff also points to defendant Ploehs's conduct with respect to the Felony case.  He alleges that defendants Ploehs and Rengering "opened an investigation" that led to the Felony case and discussed whether there was probable cause to charge plaintiff.  (Doc. 84 at PAGEID 1139-41, ¶¶ 44, 49).  Plaintiff alleges that based on Rengering's legal advice, "Ploehs filed a complaint and affidavit into Hamilton County's proprietary computer system on January 8, 2018. . . ."  (*Id.* at PAGEID 1440, ¶ 49).  Plaintiff argues that defendants Ploehs and Rengering are not entitled to qualified immunity because these allegations demonstrate that they acted "in a wanton or reckless manner, or with malicious purpose."  (Doc. 105 at PAGEID 1566).  Although an indictment generally establishes probable cause, *see Barnes*, 449 F.3d at 716, "an exception to this rule exists 'when the defendants knowingly present false testimony to the grand jury' to obtain an indictment . . . or when they 'testify with a reckless disregard for the truth[.]'" *Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016) (quoting *Martin v. Maurer*, 581 F. App'x. 509, 511 (6th Cir. 2014) and *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014)) (discussing federal malicious-prosecution claim).  The amended complaint fails to allege any facts that would plausibly suggest malicious purpose, bad faith, or wanton or reckless actions on the part of defendants Ploehs and Rengering in connection with the prosecution of the Felony case.  Plaintiff does not allege that Ploehs falsely testified before the grand jury or that Rengering was involved in the presentation of the case to the grand jury.  In any event, to the extent the amended complaint alleges the indictment was based on allegedly incorrect information and that an adequate investigation would have revealed such (*see* Doc. 84 at PAGEID 1140, ¶ 49), "a defendant's participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake, to satisfy the elements of a malicious prosecution claim

under the Fourth Amendment." *Johnson*, 790 F.3d at 655. Plaintiff has not demonstrated that defendant Rengering and Ploehs are not entitled to qualified immunity.[12]

Finally, as discussed with respect to the County defendants, any *Brady* claim asserted against defendants Ploehs of Rengering (*see* Doc. 84 at PAGEID 1438-40, ¶¶ 41, 45, 46), even if it were not insufficiently vague, cannot stand because neither the Loveland misdemeanor case nor the Felony case proceeded to trial. *See McCune*, 842 F.2d at 907.

In sum, plaintiff has failed to demonstrate that defendants Ploehs and Rengering are not entitled to qualified immunity related to plaintiff's constitutional claims in Counts I-III, V, and VIII.

### 3. *Defendant Bachman*

Plaintiff alleges that defendant Bachman, with defendants Ploehs and Hamilton County, "planned, attended and/or caused [his] false imprisonment. . . ." (Doc. 84 at PAGEID 1438, ¶ 39). Aside from this conclusory allegation, however, the amended complaint does not allege specific conduct by defendant Bachman violating a constitutional right. As discussed in connection with absolute immunity, plaintiff specifically alleges that defendant Bachman issued the EPO, the arrest warrant in connection with the EPO, and a Decision and Finding of Facts that included an incorrect date of service of the EPO. (*See* Doc. 84 at PAGEID 1437-38, 1441, ¶¶ 33, 40, 55). These specific alleged actions, within defendant Bachman's jurisdiction and judicial in

---

[12] Plaintiff also argues in response to the County and City defendants' motions to dismiss that the indictment in the Felony case was possible only because of the "unlawfully issued EPO. . . ." (Doc. 105 at PAGEID #: 1580). But that EPO issued and became a final judgment. (*See* Doc. 108-1). Plaintiff did not appeal. (*See supra* n.3). Plaintiff's argument that the EPO was unlawful relies on an improper collateral attack on this final state court judgment. *See O'Nesti v. De Bartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007) (citing *Fort Frye Teachers Ass'n., OEA/NEA v. State Emp. Relations Bd.*, 692 N.E.2d 140, 144 (Ohio 1998)) ("Issue preclusion . . . serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies."). Moreover, the illegality of the EPO would seem to relate, if to any defendant, defendant Bachman and not the other defendants.

nature, do not support a reasonable inference that defendant Bachman violated his constitutional rights. *Cf. Mireles*, 502 U.S. at 12 (judges are generally immune from liability for actions that are judicial in nature and within their jurisdiction). Plaintiff insists that these actions intentionally included a falsehood: the improper date of service of the EPO. (Doc. 84 at PAGEID 1441, ¶ 55). But plaintiff supports this narrative with conclusory and vague allegations that defendants Bachman and Ploehs "openly devised a plan" to serve plaintiff with the EPO and to "defraud Plaintiff. . . ." (*Id.* at PAGEID 1437, ¶¶ 34, 38). Without a plausible, factual allegation that defendant Bachman intentionally manufactured or fabricated some evidence that resulted in the violation of his constitutional rights, plaintiff has not demonstrated that Defendant Bachman is not entitled to qualified immunity. *See Ahlers v. Schebil*, 188 F.3d 365, 373-74 (6th Cir. 1999) ("At best, however, the investigation's lack of thoroughness might support an inference of negligence, but it does not demonstrate knowing or intentional behavior designed to violate [the plaintiff's] constitutional rights."). Plaintiff has failed to demonstrate that defendant Bachman is not entitled to qualified immunity.

C. Municipal liability

To state a 42 U.S.C. § 1983 claim for relief against a municipality, plaintiff's amended complaint must allege facts showing that the misconduct giving rise to the plaintiff's injuries was the result of a policy, regulation, decision, or custom promulgated by the city. *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)). The plaintiff must plead: "(1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Id.* at 660 (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). *See also Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (municipality's

policy must be "moving force" behind constitutional deprivation) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). "The 'official policy' requirement [of *Monell*] was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). *See also Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

Plaintiff alleges in his amended complaint that defendants Cincinnati and Hamilton County (1) had policies, practices, or customs that did not require them to turn over exculpatory evidence and (2) failed to adequately train and supervise its employees regarding probable cause and the requirement that exculpatory evidence be turned over to the defense. (Doc. 84 at PAGEID 1442-43). Plaintiff further argues that defendants Cincinnati and Hamilton County exhibited deliberate indifference to the constitutional rights of plaintiff in allowing these alleged conditions. (*Id.* at PAGEID 1443).

As an initial matter, as explained above, plaintiff has not identified a violation of his civil rights by defendants. Even if he had, the complaint does not plausibly allege a "policy or custom" of defendant Hamilton County or defendant Cincinnati that resulted in the alleged deprivation of rights. At most, plaintiff's amended complaint describes an isolated incident in which a particular defendant was allegedly impacted by a failure to turn over exculpatory evidence or establish probable cause.[13] Plaintiff has failed to identify a specific policy, connect any such policy to either defendant Hamilton County or defendant Cincinnati, or allege specific

___

[13] This argument also undercuts plaintiff's argument elsewhere that the lack of probable cause was deliberate, instead implying that the individual defendants' actions allegedly pertaining to his arrest and indictment were simply the result of improper training.

26

facts showing that he suffered a deprivation of constitutional rights based on the execution of such a specific policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds as stated in Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)) ("[T]o satisfy the [*Monell*] requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'"). *See also Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) ("[E]ven assuming there was an underlying constitutional violation, we affirm the dismissal of the *Monell* claim because Plaintiffs have failed to set forth sufficient facts to establish an unconstitutional custom or policy."). Plaintiff has not alleged any other instances of misconduct to plausibly support an inference of a custom or a pattern in this case. The *Monell* claims against defendant Hamilton County and defendant Cincinnati should be dismissed.

    D.   <u>Tort immunity under the PSTLA</u>

    The defendants assert that they are shielded from liability for the tort claims asserted by operation of the PSTLA. To determine whether a political subdivision enjoys immunity under the PSTLA, Ohio courts employ a three-tiered analysis. *Hortman v. Miamisburg*, 852 N.E.2d 716, 718 (Ohio 2006). Courts are to first examine whether the political subdivision falls within the general immunization from liability under Ohio Rev. Code § 2744.02(A). *Id.* Courts are to next analyze whether an exception to immunity set out in Ohio Rev. Code § 2744.02(B)(1)-(5) applies. *Id.* Finally, courts are to determine whether a defense under Ohio Rev. Code § 2744.03 applies to reinstate immunity. *Id.*

    One of the exceptions set forth in the second part of the analysis (the exception upon which plaintiff relies) is that "political subdivisions *are* liable for injury, death, or loss to person

or property caused by the *negligent performance* of acts by their employees with respect to *proprietary functions* of the political subdivisions." Ohio Rev. Code § 2744.02(B)(2) (emphasis added). But in the third part of the analysis, the statute incorporates the previously discussed absolute immunity for prosecuting attorneys and judicial officers. *See id.* at § 2744.03(A)(7).[14] In addition, employees of political subdivisions may have their immunities reinstated unless their negligent acts or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner. . . ." *Id.* at § 2744.03(A)(6)(b).[15]

Both counties and municipal corporations (such as Cincinnati) are included in the statute's definition of "political subdivision." *Id.* at § 2744.01(F). Expressly enumerated governmental functions include "[t]he provision . . . of police . . . services or protection[,] . . . judicial . . . prosecutorial . . . functions[;]" and "[t]he enforcement or nonperformance . . . of any law. . . ." *Id.* at §§ 2744.01(C)(2)(a), (f), and (i). The statute's definition of "proprietary function" specifically excludes functions that are listed under § 2744.01(C)(2) and "for the common good of all citizens of the state. . . ." *Id.* at § 2744.01(G)(1)(a) (incorporating § 2744.01(C)(1)(b)).

Plaintiff argues that defendants Hamilton County and Cincinnati engaged in a proprietary function as it relates to many of his allegations throughout the amended complaint because they

---

[14] This subsection reads:

> The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code.

*Id.*

[15] This subsection also excepts political subdivision employees from immunity if their acts or omissions are "manifestly outside the scope of . . . employment or official responsibilities" or if "civil liability is expressly imposed" for the act or omission elsewhere in Ohio's Revised Code. *Id.* at §§ 2744.03(a)(6)(a), (c). Plaintiff's arguments relate only to subsection (b).

were "providing, maintaining, and monitoring computer services. . . ." (*See* Doc. 105 at PAGEID 1573). The Court is not persuaded. Despite plaintiffs attempts to skirt the operation of the PSTLA, the allegations of the complaint concern the provision of police services, prosecutorial functions, and law enforcement. *See* Ohio Rev. Code § 2744.01(C)(2). Any provision, maintaining, or monitoring of computer services related to these actions was part and parcel to the City and County defendants' performance of police services, prosecutorial functions, and law enforcement—all governmental functions as defined by the PSTLA.

In addition, immunity would be reinstated (even if was eliminated pursuant Ohio Rev. Code § 2744.02) to the individual County defendants, the individual City defendants, and defendant Bachman based on the application of Ohio Rev. Code §§ 2744.03(A)(6) and (7). *See Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007) ("Whether the defendants are liable as individuals . . . turns on the availability of statutory immunity . . . [and] whether any of the immunity exceptions § 2744.03(A)(6) apply."). The specific, nonconclusory allegations against the County and City defendants do not plausibly assert malice, bad faith, or wanton/reckless behavior that would prevent immunity; rather, they describe political-subdivision employees engaged in their normal functions. *See* Ohio Rev. Code § 2744.03(A)(6). Vague and blanket allegations of malice are insufficient to defeat defendants' motions to dismiss on the basis of tort immunity. (*See, e.g.,* Doc. 84 at PAGEID 1435) ("At all times relevant to this action, each individually named defendant (without exclusion) acted maliciously, in bad faith, and/or in a wanton or reckless manner. . . ."). *See Mills*, 869 F.3d at 481 ("[T]he plain statement that Jenkins 'intentionally, maliciously, [or with ... reckless disregard' subjected Mills to malicious prosecution is insufficient standing on its own.") (citing *Iqbal*, 556 U.S. at 686). The County

prosecutors, defendant Rengering, and defendant Bachman also retain their common law absolute immunities already discussed.  *See* Ohio Rev. Code § 2744.03(A)(7).

Political subdivisions Hamilton County and Cincinnati retain immunity related to the actions of their employees "engaged in the performance of a judicial, quasi-judicial, [or] prosecutorial . . . function[,]" i.e., defendants Deters, Prem, Garrison, Polston, Rengering, and Bachman.  *Id.* at § 2744.03(A)(1).  This leaves only Hamilton County and Cincinnati's potential liability related to the actions of defendants Hrnyak and Ploehs.  But as discussed above, plaintiff has not offered a plausible argument that their police and law enforcement actions described in plaintiff's amended complaint could be considered anything other than governmental functions.

Finally, plaintiff argues that if the Court finds that the PSTLA immunizes Cincinnati or Hamilton County, the doctrine of *respondeat superior* provides an alternative basis for liability. (Doc. 105 at PAGEID 1573-74) (citing *Stallworth v. City of Cleveland*, 893 F.2d 830 (6th Cir. 1990) and *Longfellow v. City of Newark*, 480 N.E.2d 432 (Ohio 1985)).  The PSTLA, however, "was enacted in response to the judicial abolishment of the common-law doctrine of sovereign immunity for municipal corporations . . . .  The Act established statutory tort immunity in some cases in which political subdivisions, including cities, may otherwise be sued in negligence." *Haynes v. Franklin*, 346, 767 N.E.2d 1146, 1149 (Ohio 2002) (citation omitted).  The doctrine of *respondeat superior* does not defeat the immunity afforded defendants Hamilton County or Cincinnati under the PSTLA.

E.  Fraud claims (Counts XII and XIII)

Although a combination of absolute, qualified, and tort immunities serve to eliminate all of the claims against all of the defendants, they raise several alternative bases for why plaintiff's claims fail as a matter of law.  The Court begins with plaintiff's fraud claims.

30

Both the County and City defendants argue that plaintiff has failed to adequately allege

fraud.  A claim for fraud under Ohio law requires (1) a representation, or concealment of fact

where there is a duty to disclose, (2) materiality, (3) that the representation was made falsely (or

with such disregard as to the truth that knowledge can be inferred), (4) justifiable reliance on the

misrepresentation, and (5) resulting injury.  *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio

1984) (citation omitted).  To meet the heightened pleading requirements for fraud under Rule

9(b) of the Federal Rules of Civil Procedure, a plaintiff must allege "the time, place, and content

of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent

intent of the defendants; and the injury resulting from the fraud."  *Coffey v. Foamex L.P.*, 2 F.3d

157, 161-62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D.

Mich. 1992)).  In the context of an alleged fraudulent omission, a plaintiff must plead: "(1)

precisely what was omitted; (2) who should have made a representation; (3) the content of the

alleged omission and the manner in which the omission was misleading; and (4) what [the

tortfeasor(s)] obtained as a consequence of the alleged fraud."  *Republic Bank & Tr. Co. v. Bear

Stearns & Co., Inc.*, 683 F.3d 239, 256 (6th Cir. 2012) (citation omitted).

Plaintiff seems to allege fraud in connection with defendant Ploehs's voicemail to him

regarding the issuance of the EPO.  (*See* Doc. 84 at PAGEID 1437, ¶ 37).  As discussed above,

however, an EPO *had* issued; defendant Ploehs's representation was not false.  To the extent,

then, that plaintiff alleges a fraudulent omission in this voicemail (i.e., the status of service of the

EPO), plaintiff does not allege that (or suggest any legal basis why) defendant Ploehs would

have been under an obligation to discuss any details regarding service of the EPO.  Put

differently, the Court sees no reason why a reasonable trier of fact would find that plaintiff

justifiably relied on an omission about service of the EPO. The service of the EPO was not the alleged basis for the voicemail. The alleged voicemail does support a cognizable fraud claim.

The only other alleged representation of any kind in the amended complaint is that defendants Ploehs, Hrnyak, Hamilton County, and Bachman, later joined by Garrison, Prem, Polston, Deters, and Rengering, "agreed that at least one . . . would falsely represent" the legality of the EPO and the date of service of the EPO. (Doc. 84 at PAGEID 1448-49, ¶¶ 95-96). This allegation does not pertain to a specific person nor include when (or even if) this particular representation ever actually took place. Plaintiff frames the misrepresentation as "[b]eginning on or around June 29, 2017," and otherwise does not identify a time that the misrepresentation was allegedly made. (*See id.* at ¶ 95). These allegations are too vague to support a fraud claim. *See Coffey*, 2 F.3d at 161-62. Whether plaintiff's allegations are construed as fraudulent omission or misrepresentation, plaintiff's fraud claims against all defendants (except Cincinnati, who is not identified in Counts XII and XIII) should be dismissed.

F. OCAA claims

Under the OCAA, "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity. . . ." Ohio Rev. Code § 2923.32(A)(1). This statute is patterned after RICO, and Ohio courts look to federal case law applying RICO to guide in its application. *U.S. Demolition & Contracting, Inc. v. O'Rourke Constr. Co.*, 640 N.E.2d 235, 240 (Ohio App. 1994). Civil claims under the federal RICO statute, 18 U.S.C. § 1962(c), require proof of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted). "[A] pattern of corrupt activity under the [OCAA] requires that predicate crimes be related and pose a

32

threat of continued criminal activity."  *Bradley v. Miller*, 96 F. Supp. 3d 753, 773 (S.D. Ohio

2015) (quoting *Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 708 (Ohio App.

2009)).

 As an initial matter, neither defendant Hamilton County nor defendant Cincinnati can be

held liable under the OCAA because they are not capable of forming the requisite specific intent.

*See Mathis v. Ohio Dep't of Job & Family Servs.*, No. 2:11-cv-395, 2011 WL 5075824, at *2

(S.D. Ohio Oct. 25, 2011) ("While the Sixth Circuit has not directly ruled on this issue, an

unpublished Sixth Circuit case and district courts within the Sixth Circuit have all held that a

RICO claim cannot be established against a county because a county cannot form the specific

intent necessary to establish a RICO claim.") (collecting cases holding that counties,

municipalities, and corporations cannot be held liable under civil RICO laws).  The Court

therefore turns to the allegations as they relate to the individual defendants.

 Plaintiff's amended complaint first asserts that defendants Ploehs, Bachman, Hrnyak,

Deters, Garrison, and Hamilton County conspired and committed several predicate offenses "[i]n

or about and between June 2017 and July 2017 . . . with purpose to corrupt the outcome of the

investigation" in the Loveland misdemeanor case.  (Doc. 84 at PAGEID 1445, ¶ 77).  Plaintiff

then cites a laundry list of alleged, related predicate offenses: telecommunications fraud (Ohio

Rev. Code § 2913.05(A)), tampering with records (Ohio Rev. Code § 2913.42(A)(2)), tampering

with evidence (Ohio Rev. Code § 2921.12(A)(2)), theft in office (Ohio Rev. Code §§

2921.41(A)(l) and (2)), and using sham legal process to facilitate the commission of an offense

(Ohio Rev. Code §  2921.52(B)(3)).  (*Id.*).

 The allegations that plaintiff identifies as related to these predicate offenses (*see* Doc. 84

at PAGEID 1436-38) make no effort to track the elements of the various violations of Ohio

Revised Code sections listed as predicate offenses. While sprinkled with conclusory terms like "unlawfully," "falsely," and "meeting of the minds," these allegations describe what appear to be routine actions by the defendants in connection with the issuance of the EPO by defendant Bachman and the enforcement thereof. In addition, the Court cannot discern a discrete enterprise or how such enterprise posed a continued threat of criminal activity. *See Bradley*, 96 F. Supp. 3d at 773.

Plaintiff next asserts that defendants Ploehs, Hamilton County, Bachman, Garrison, Rengering, Deters, and Prem conspired and committed several predicate offenses "[i]n or about and between June 2017 and September 2018" in relation to the Loveland misdemeanor case—in particular, concealing exculpatory evidence regarding the date of when plaintiff was served with the EPO and whether the EPO lawfully issued. (Doc. 84 at PAGEID 1446, ¶ 78). Here, plaintiff alleges related predicate offenses including telecommunications fraud (Ohio Rev. Code § 2913.05(A)), tampering with records (Ohio Rev. Code § 2913.42(A)(2)), tampering with evidence (Ohio Rev. Code § 2921.12(A)(2)), falsification in a theft offense (Ohio Rev. Code § 2921.13(A)(9)), obstructing justice (Ohio Rev. Code § 2921.32(A)(5) and (6)), theft in office (Ohio Rev. Code § 2921.41(A)(l)), and using sham legal process to arrest, detain, search or seize any person or to commit a felony (Ohio Rev. Code §§ 2921.52(B)(2) and (4)). (*Id.*).

The allegations that plaintiff identifies as related to these predicate offenses (Doc. 84 at PAGEID 1438-40) are that defendants Deters, Garrison, and Prem did not adequately investigate the Loveland misdemeanor case; defendant Garrison participated in discovery for the Loveland misdemeanor case; defendants Rengering and Ploehs investigated what would ultimately result in the Felony case; defendants Ploehs, Bachman, Hamilton County, Garrison, Rengering, Prem, and Deters all agreed to use defendant Hrnyak's allegedly false writ to corrupt the outcome of

34

the Loveland misdemeanor case; defendant Prem did not dismiss the City misdemeanor case due to alleged prosecutorial misconduct by defendant Rengering; and plaintiff's prosecution in the Loveland misdemeanor case prevented his receipt of certain jail-time credit and his ability to report alleged violations of federal rights.  (*Id.*)

Here again, these allegations are not tied to the elements of any of the particular predicate offenses listed.  The Court likewise cannot discern the discrete enterprise responsible for the alleged predicate offenses and how such enterprise posed a continued threat of criminal activity. *See Bradley*, 96 F. Supp. 3d at 773.

Plaintiff last asserts that defendants Ploehs, Bachman, Hrnyak, Hamilton County, Rengering, Garrison, Prem, Deters, and Polston conspired and committed several predicate offenses "[o]n or about and between January 2, 2018 and January 8, 2020" to cover up allegedly exculpatory evidence.  (Doc. 84 at PAGEID 1446, ¶ 80).  Here, the alleged predicate offenses include telecommunications fraud (Ohio Rev. Code § 2913.05(A)), tampering with records (Ohio Rev. Code § 2913.42(A)(2)), tampering with evidence (Ohio Rev. Code § 2921.12(A)(2)), falsification in a theft offense (Ohio Rev. Code § 2921.13(A)(9)), obstructing justice (Ohio Rev. Code § 2921.32(A)(5)), and using sham legal process to arrest, detain, search and seize any person (Ohio Rev. Code § 2921.52(B)(2)).

The allegations that plaintiff identifies as related to these predicate offenses (Doc. 84 at PAGEID 1440-42) concern an investigation related to the Felony case, the related grand jury proceedings, and the related prosecution; as well as defendant Bachman's transmission of his Decision and Findings of Facts related to the EPO and his representation that the EPO was issued lawfully.  (*Id.*)  These allegations are not tied to the elements any of the listed predicate offenses,

say nothing of an "enterprise," and give no indication of a continued threat of criminal activity. *See Bradley*, 96 F. Supp. 3d at 773.

Having reviewed the allegations in the complaint against Ohio's RICO statute and Rule 8 of the Federal Rules of Civil Procedure's pleading standard (requiring less than "detailed factual allegations" but more than "unadorned, the-defendant-unlawfully-harmed me accusation" and "labels and conclusions[,]" *see Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)), the Court finds that plaintiff fails to state a claim for relief in Counts VI and VII of the amended complaint against any of the individual defendants. In addition, the County and City prosecutors and defendant Bachman retain their common law immunities notwithstanding the OCAA. *See Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir. 1997) ("Section 1983 was not intended to abolish [judicial and prosecutorial] immunity . . . and we have been given no reason to suppose that RICO was intended to abolish it either.") (internal citation omitted). Counts VI and VII of the amended complaint should be dismissed against all defendants.

G. Civil rights conspiracy claims

Section 1985 of Title 42 includes three subsections, two of which are potentially applicable to this case. First, there is a cause of action for conspiracy to obstruct justice or to intimidate parties, witnesses, or jurors. *Id.* at § 1985(2). This less-commonly-invoked subsection sets out two discrete claims: one related to justice in federal courts and the other related to equal protection in state or territorial court proceedings. *Allen v. Allied Plant Maint. Co. of Tenn.*, 636 F. Supp. 1090, 1093 & n.4 (M.D. Tenn. 1986) (discussing the two-parts of this subsection). Relevant here, the latter state-court related claim must raise "racial or other class-based discriminatory animus" to state a claim upon which relief can be granted. *Id.* at 1093 (citing *Bretz v. Kelman*, 773 F.2d 1026, 1029-30 (9th Cir. 1985)).

Section 1985 also provides a cause of action for conspiracy to deprive an individual the equal protection of the law. *See* 42 U.S.C. § 1985(3). To state a § 1985(3) claim, plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood. of Carpenters and Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). A § 1985(3) claim must also allege racial or class-based invidiously discriminatory animus driving the conspiracy. *See Scott*, 463 U.S. at 834 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). As it relates to either claim, "conspiracy . . . must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

Plaintiff has failed to plead specific facts to support a conspiracy claim under either 42 U.S.C. §§ 1985(2) or (3). At multiple points in his amended complaint, plaintiff alleges "meeting[s] of the mind[,]" "agree[ments,]" and "conspir [ing]" between various defendants to take actions adverse to plaintiff. (*See, e.g.,* Doc. 84 at PAGEID 1438-39, 1445, 1448-49, ¶¶ 41, 45, 76-77, 95-96). But these allegations contain only general date ranges of when they might have occurred (if dates are provided at all) untethered from any context as to where, between exactly whom, or why these agreement were made. Without any such factual content, the Court cannot reasonably conclude that plaintiff states a plausible claim of conspiracy against defendants. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, plaintiff has made no allegation that the defendants' actions were in any way motivated by racial or class-based animus or an intent to deprive plaintiff of the equal protection of the laws.  Therefore, plaintiff's civil rights conspiracy claim, whether asserted under 42 U.S.C. § 1985(2) or § 1985(3), should be dismissed.  *See Allen*, 636 F. Supp. at 1093; *Scott*, 463 U.S. at 834.

Finally, because plaintiff has no viable claim under 42 U.S.C. § 1985, he also has no claim under 42 U.S.C. § 1986 against defendant Deters.  "Section 1986 establishes a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Radvansky*, 395 F.3d at 314 (quoting 42 U.S.C. § 1986).  Because the complaint does not state a claim under 42 U.S.C. § 1985, there can be no liability under § 1986.  *Id.* at 315.  Therefore, plaintiff's claim under 42 U.S.C. § 1986 should be dismissed.

G.  Abuse of process

Abuse of process under Ohio law requires "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Bickerstaff*, 830 F.3d at 399 (quoting *Voyticky*, 412 F.3d at 677) (remaining citation omitted).  The claim cannot survive if supported "only by 'conclusory allegations regarding the defendants' ulterior motives with no facts to support those contentions.'" *Id.* at 400 (quoting *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999)).

The County and City defendants argue that plaintiff has failed to articulate an ulterior motive that animated their prosecutions of plaintiff.  Plaintiff first responds that his amended

complaint identifies the City defendants' ulterior motive in its prosecution of the Loveland misdemeanor and Felony cases: a scheme to deny him "3-for-1 credit" on the City misdemeanor case. (Doc. 84 at PageID 1440, ¶ 48).[16] The denial of this credit, plaintiff argues, both prevented him from reporting a violation of his speedy trial right in the City misdemeanor case and resulted in his ultimate conviction therein. (*Id.*). Plaintiff does not allege any details regarding the 3-for-1 credit program, such as whether it is a mandatory program, how it is administered, whether cases that are ultimately dismissed (i.e., the Loveland misdemeanor and Felony cases) prevent a defendant from availing himself of the benefit, and most importantly, how denial of this benefit is connected to his speedy trial rights or his ultimate conviction in the City misdemeanor case. Without such information, plaintiff does not adequately allege damage resulting from the alleged abuse of process.

Plaintiff also seems to argue that defendant Prem failed to alert him to the fact that defendant Rengering knew that the EPO was illegal, which prevented dismissal of the City misdemeanor case based on defendant Rengering's prosecutorial misconduct for lying to the state court. (*Id.* at PAGEID 1440, ¶ 47). But as discussed above, the EPO became a final protection order; there is therefore no reason to believe that defendant Prem or defendant Rengering intentionally misrepresented its validity to the state court in connection with the City misdemeanor case. (*See supra* n.3).

Finally, plaintiff argues that the prosecution of the Loveland misdemeanor case allowed defendant Ploehs to interfere with the grand jury proceeding in the Felony case. The amended complaint does not plausibly describe that defendants continued to prosecute the Loveland misdemeanor case in order to establish probable cause for the Felony case beyond innuendo and

---

[16] Plaintiff also cites paragraph 45 of the amended complaint as demonstrating the City defendants' ulterior motives (Doc. 105 at PAGEID 1579), but the Court cannot discern an ulterior motive from this paragraph.

vague conspiracy theories.  Moreover, the only specific allegations even possibly connecting the individual City defendants, in particular, to the Loveland misdemeanor case are Ploehs's voicemail that an EPO had issued against plaintiff and defendant Rengering's representation of Hamilton County during one court proceeding in the Loveland misdemeanor case *after* charges were filed, during which he requested electronic monitoring of plaintiff.  (*See* Doc. 84 at PAGEID 1437, 1439).  But neither allegation reflects that defendant Ploehs or defendant Rengering had any direct involvement in the Loveland misdemeanor case such that an alleged ulterior motive related to the Felony case would drive its continued prosecution.

Because the allegations in the amended complaint do not permit a reasonable inference that any of the defendants had an ulterior motive to continue their prosecutions of plaintiff, the abuse of process claim should be dismissed.  *See Bickerstaff*, 830 F.3d at 400.

H.  Ohio constitutional claims

Defendants do not address these claims specifically except to the extent that the County defendants argue that they are foreclosed by the PSTLA.  (*See* Doc. 102 at PAGEID 1551).  The Ohio Supreme Court "has refused to recognize a private cause of action for violations of the Ohio Constitution when it is determined that there are adequate remedies provided by statute or administrative process." *Williams v. Nice*, 58 F. Supp. 3d 833, 839 (N.D. Ohio 2014) (quoting *Provens v. Stark Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 594 N.E.2d 959, 965-66 (Ohio 1992)).  *See also Burr v. Burns*, No. C2-04-1118, 2005 WL 1969532, at *10 (S.D. Ohio Aug. 12, 2005) ("Plaintiffs' claim under the search and seizure provisions of the Ohio Constitution is a restatement of their federal claim under the Fourth Amendment to the United States Constitution.  Section 1983 provides a full panoply of remedies for a search and seizure claim under the United States Constitution."); *Ware v. Sanderson*, No. 1:12-cv-01920, 2013 WL

40

587583, at \*3 (N.D. Ohio Feb. 13, 2013) ("The Ohio Constitution does not provide a private cause of action for false arrest or excessive force, nor does it provide a civil damages remedy.").

Plaintiff specifically alleges that defendants violated his right, as a victim of a crime, "to reasonable protection from the accused or any person acting on behalf of the accused. . . ." Ohio Const. art. I, § 10a(A)(4). The Court can locate no allegations relative to this alleged violation in plaintiff's amended complaint and he makes no argument relative to this claim in his responsive memoranda. This, along with a lack of a private cause of action under Ohio's Constitution, is fatal to the first claim in Count XIV. Plaintiff also alleges violations of Ohio Const. art. I, § 14, which is nearly identical to the search-and-seizure provision of the Fourth Amendment and which is necessarily adequately remedied by use of 42 U.S.C. § 1983. *See Burr*, 2005 WL 1969532, at \*10. As such, the Court finds that plaintiff's claims based on Ohio's Constitution should be dismissed.

## VI. CONCLUSION

Plaintiff's amended complaint describes a broad conspiracy among numerous Cincinnati and Hamilton County officials to corrupt legal proceedings in order to harass him and deprive him of his constitutional rights. The allegations in the amended complaint that are plausible, factual, and nonconclusory, however, describe judicial and prosecutorial functions for which defendants Bachman, Rengering, Deters, Prem, Garrison, and Polston are entitled to absolute immunity. Plaintiff has further failed to articulate specific constitutional violations by these defendants, in addition to defendants Hrnyak and Ploehs, and they therefore remain entitled to qualified immunity. Plaintiff has also failed to allege policies, practices, or customs promulgated by Cincinnati or Hamilton County that resulted in deliberate indifference to his constitutional rights such that either could be held liable under *Monell*.

41

As it relates to plaintiff's OCAA claims, plaintiff's amended complaint does not adequately allege the particulars of the conspiracy or the commission of predicate offenses. Moreover, Cincinnati and Hamilton County cannot form the requisite intent to be held liable under this statute. As it relates to plaintiff's state law claims, defendants are shielded by a combination of the PSTLA, their common law immunities, and plaintiff's failure to adequately plead their elements. Finally, plaintiff's Ohio constitutional claims must be dismissed because the Ohio Supreme Court does not recognize a private right of action under the sections of the Ohio Constitution invoked.

**IT IS THEREFORE RECOMMENDED THAT:**

A.  defendant Bachman's motion for judgment on the pleadings (Doc. 99) be construed as a motion to dismiss; and

B.  defendants' motions to dismiss (Docs. 97, 99, and 102) be **GRANTED** as follows:

    1.  Counts I and II of the amended complaint be dismissed as to all defendants;

    2.  Count III of the amended complaint be dismissed as to defendant Cincinnati and Hamilton County;

    3.  Count IV of the amended complaint be dismissed as to all defendants;

    4.  Count V of the amended complaint be dismissed as to all defendants;

    5.  Counts VI and VII of the amended complaint be dismissed as to all defendants;

    6.  Counts VIII of the amended complaint be dismissed as to defendant Deters, the only defendant identified in this Count;

    7.  Count IX of the amended complaint be dismissed as to all defendants;

    8.  Counts X and XI of the amended complaint negligence be dismissed as to all defendants;

    9.  Counts XII and XIII of the amended complaint be dismissed as to all defendants except Cincinnati, which was not identified in this Count; and

10. Count XIV of the amended complaint be dismissed as to all defendants.

C.  In the alternative, as it relates to the state law claims asserted in Counts IV, VI-VII, IX-XIV, it is recommended that the District Court refuse to exercise its supplemental jurisdiction.  *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007) ("A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction.") (citing 28 U.S.C. § 1367(c)(3)).

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BRYAN KANU,                                        Case No: 1:19-cv-156
       Plaintiff,                                  Dlott, J.
                                                              Litkovitz, M.J.

     vs.

CITY OF CINCINNATI et al.,
       Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).